[No. A095590. First Dist., Div. Five. Jan. 29, 2003.]

TADAO YAMAGUCHI et al., Plaintiffs and Respondents, v.
CHAIYUT HARNSMUT et al., Defendants and Appellants.

## COUNSEL

Haight, Brown & Bonesteel, Rita Gunasekaran; Murphy, Pearson, Bradley & Feeney, Timothy J. Halloran, Christine A. Huntoon and Scott L. Johnson for Defendants and Appellants.

Bennett & Yee, William M. Bennett and Gwendolyn K. Yee for Plaintiffs and Respondents.

## OPINION

**STEVENS, Acting P. J.**—Chaiyut Harnsmut (Harnsmut) and his wife, Urai Chaloeicheep (Chaloeicheep), appeal from a judgment holding them vicariously liable for injuries suffered by a police officer at the hands of their employee. They contend their liability is precluded by the firefighter's rule and that their employee's actions were not within the scope of his employment for purposes of respondeat superior, or at least the matter should have been submitted to the jury. We agree the court erred in not submitting the issue of respondeat superior to the jury, and we vacate the judgment.

### I. FACTS AND PROCEDURAL HISTORY

Appellants Harnsmut and Chaloeicheep own Lalita Thai Restaurant in San Francisco. As of August 1998, Wisan Vatanavkovarun (Wisan) had been head chef at the restaurant for 16 months. A kitchen assistant, Noy Sivongxay (Noy), had worked at the restaurant approximately four months before Wisan, initially as a dishwasher. Wisan and Noy did not know each other before working at the Lalita Thai Restaurant, did not socialize together, and had only one contact outside the restaurant, when Noy gave Wisan a ride home.

During their 16 months at the restaurant, Wisan and Noy had argued three times. On one of these occasions, Wisan brandished a knife and told Noy, "I will hit you with the knife," but Noy thought he was joking. Noy believed Wisan acted like a "dictator," requiring him to do more than his rightful duties. Their last argument occurred three to four days before the subject incident, after Noy went out to buy cigarettes. Chaloeicheep, who supervised the kitchen, was unaware Wisan was upset with Noy for taking a cigarette break. During routine meetings she held with the kitchen staff every few months, however, employees had complained that Wisan was too bossy or strict. A kitchen staff meeting had been scheduled for the afternoon of August 6, 1998, to discuss the division of labor in the kitchen.

A. *The Attack*

On August 6, Noy arrived at the restaurant shortly before 10:00 a.m. Wisan, who was already there, unlocked the door for Noy and smiled. The two men had no conversation, and the restaurant had not yet opened for business. About five minutes later, as Noy was bending down and pulling vegetables to place on the table, Noy felt a knife plunge into his back. A struggle ensued between Noy and Wisan, and a kitchen employee ran to the police station down the block and reported the stabbing. Respondent Officer Tadao Yamaguchi and Sergeant Charlie Orkes, both in uniform, ran to the restaurant. Arriving first, Yamaguchi became the contact officer, with primary responsibility to control the situation and issue orders.

The officers were directed to the kitchen, an area where there are "numerous items that can be used as a deadly weapon." Yamaguchi announced, "Police." Entering the kitchen, he witnessed two men wrestling on the ground, one on top of the other, covered in blood. With his firearm drawn, Yamaguchi ordered the men to "[s]top" and "[s]tand up." Wisan, on top, complied. There was no weapon in Wisan's hands, but blood flowed down his face from a cut across his forehead. At Yamaguchi's command, Wisan backed up a couple of steps. In a slightly crouched position, Yamaguchi gestured to Noy and instructed him verbally to come towards him.

Noy, covered with blood and appearing weak and incoherent, started crawling towards the officer. Wisan meanwhile picked up a metal pot from the stove. Yamaguchi and Sergeant Orkes, as well as Sergeant Antonio Flores who had joined them, each ordered Wisan to drop the pot, but he did not comply. Instead, he scooped the pot into the deep fryer, filled it with hot oil, and threw the hot oil in the direction of Noy and Yamaguchi, who were by then about a foot apart. Both Noy and Yamaguchi were hit with the oil. Wisan immediately scooped up a second pot of hot oil and threw it in the direction of Noy, Yamaguchi, and Orkes. Noy and Yamaguchi were again hit with the oil. Sergeant Flores ordered Wisan to drop the pot, and he complied.

Approximately 30 seconds had elapsed between the officers' arrival and the time Wisan threw the hot oil. Orkes described the events as "a continuing type of on-going events from one step to the next step. A continuing flow." Yamaguchi sustained severe burns to his face, neck, torso, and arms, and damage to his ears.

B. *Litigation*

Yamaguchi and his wife, Tracy, sued appellants (as well as Wisan and appellants' daughter, who are not parties to this appeal). The complaint pled

causes of action against appellants for negligent retention and supervision of Wisan. Other causes of action for battery and assault and for negligence were alleged solely against Wisan. In addition, the complaint alleged that appellants were vicariously liable for Wisan's conduct under the doctrine of respondeat superior, and that Yamaguchi was not barred from relief by the "firefighter's rule" because each defendant fell within the rule's exception set forth in Civil Code section 1714.9.[1] The complaint sought damages for bodily injuries, loss of consortium, emotional distress, and loss of income and earning capacity, as well as punitive damages.

Yamaguchi's employer, the City and County of San Francisco (City), filed a complaint in intervention seeking reimbursement of the workers' compensation benefits paid to the officer.

### C. *Appellants' Motion for Summary Judgment*

Appellants moved for summary judgment or, in the alternative, summary adjudication as to the causes of action asserted against them by Yamaguchi. Appellants argued they could not be liable to Yamaguchi as a matter of law because they did not negligently retain or supervise Wisan, his acts were not within the scope of his employment, and the firefighter's rule precluded their liability. Summary adjudication was granted as to the second cause of action (negligent retention and supervision) under Civil Code section 1714.9.[2] The trial court otherwise denied the motion, leaving as to appellants only the claims based on vicarious liability.

Appellants sought our review of the ruling by a petition for writ of mandate and/or prohibition (*Harnsmut v. Superior Court* (Mar. 15, 2001, A094263)), which we summarily denied.

### D. *Denial of Appellants' Motion to Compel Wisan's Testimony*

Appellants brought a motion under Code of Civil Procedure section 1995 requesting the trial court to order Wisan, who was then in a prison medical facility, to testify at trial. They argued his testimony was vital because only he knew why he stabbed Noy and what he could see, despite the blood from his forehead, when he threw the hot oil. This motion was denied without prejudice to renewal before the trial judge. The trial judge, in turn, indicated

---

[1] As we discuss further *post*, the "firefighter's rule" generally bars a firefighter or police officer from recovering from any person for injuries incurred in the line of duty. Civil Code section 1714.9, however, provides an exception with respect to a defendant who, inter alia, willfully or negligently caused the injuries after he knew or should have known of the officer's presence.

[2] Unless otherwise indicated, all further section references refer to the Civil Code.

he would not order Wisan's appearance because appellants could have deposed him during discovery proceedings. Appellants did not pursue the matter further.

### E. *Jury Instructions*

Because a default had been entered against Wisan, trial proceeded as to appellants only.

At the completion of evidence, appellants proposed a jury instruction setting forth the firefighter's rule.[3] The court declined, instructing the jury instead on a claim based on the exception to the firefighter's rule in section 1714.9 (BAJI No. 4.61). The court explained that the statutory exception applied because "the facts were undisputed as to Wisan's knowledge that these were police officers." Because the exception applied, the court concluded, instructing the jury on the firefighter's rule would be misleading.

The court also refused appellants' proposed instructions on vicarious liability. Instead, the jury was instructed, based on BAJI No. 13.04, that as a matter of law Wisan was the appellants' employee and his acts and omissions were attributable to appellants: "It is established that Wisan, last name, Vatanavkovarun, was the employee of Defendants Chaiyut Harnsmut and Urai Chaloeicheep. Therefore, any act or omission of Wisan Vatanavkovarun was in law the act or omission of the Defendants Chaiyut Harnsmut and Urai Chaloeicheep."

### F. *Jury Verdict and Judgment*

By special verdict, the jury found that appellants had engaged in negligent and willful conduct, which caused Yamaguchi's injuries.[4] The jury awarded Yamaguchi $59,760 in economic and $1 million in noneconomic damages, the City $105,763.55, and Tracy Yamaguchi $35,000. The jury also attributed 25 percent of Yamaguchi's damages to appellants' negligence and 75 percent to appellants' willful conduct. Judgment was entered accordingly.

### G. *Posttrial Motions*

Appellants filed a motion for judgment notwithstanding the verdict and a motion for a new trial. They maintained, among other things, that Wisan's

---

[3]Special instruction No. 2 read: "The firefighter's rule precludes recovery for injuries suffered as a direct consequence of responding to calls in the line of duty. Even the member of the public whose conduct precipitates the intervention of a police officer does not owe a police officer a duty of care regarding the acts causing the officer's intervention."

[4]There is no evidence appellants themselves were negligent or committed willful misconduct. Nor was there any cause of action, at the time of trial, alleging they were. The jury's verdict can only be explained as a product of the court's instruction that "any act or omission of Wisan Vatanavkovarun was in law the act or omission of" appellants.

assault was not committed in the scope of his employment as a matter of law, or was an issue of fact that should have been determined by the jury. Appellants also argued the court should have ruled as a matter of law that the firefighter's rule applied. Both motions were denied.

## II. DISCUSSION

Appellants contend: (1) Wisan's attack on Noy (or, more accurately, upon Yamaguchi) was not within the scope of his employment; (2) Yamaguchi's recovery was barred by the firefighter's rule; (3) appellants may not be held vicariously liable under section 1714.9; and (4) the trial court erred in refusing to instruct the jury on the firefighter's rule and vicarious liability, and by instructing instead on the statutory exception to the firefighter's rule and directing that Wisan's conduct was the conduct of appellants as a matter of law.

To clarify the appropriate analysis of these issues, we reorder them. Because there was no basis for appellants' liability for Yamaguchi's injuries except under a theory of vicarious liability for Wisan's acts, we first examine Wisan's liability in light of the firefighter's rule and section 1714.9, and then address the question of appellants' vicarious liability under the doctrine of respondeat superior.

### A. Wisan's Liability, the Firefighter's Rule, and Section 1714.9

■ The "firefighter's rule," as originally expressed, precludes a firefighter from recovering damages from the person whose negligence contributed to the fire that caused the firefighter's injuries. (*Calatayud v. State of California* (1998) 18 Cal.4th 1057, 1061 [77 Cal.Rptr.2d 202, 959 P.2d 360] (*Calatayud*).) The rule applies as well to police. As stated by our Supreme Court: "a member of the public whose conduct precipitates the intervention of a police officer" does not "owe a duty of care to the officer with respect to the original negligence that caused the officer's intervention." (*Neighbarger v. Irwin Industries, Inc.* (1994) 8 Cal.4th 532, 538 [34 Cal.Rptr.2d 630, 882 P.2d 347].)

The firefighter's rule is based on the doctrine of assumption of the risk: public safety officers, whose occupation necessarily exposes them to certain risks of injury, cannot complain of negligent acts that create the very reason for their employment. (*Walters v. Sloan* (1977) 20 Cal.3d 199, 202 [142 Cal.Rptr. 152, 571 P.2d 609] (*Walters*); see *Calatayud, supra,* 18 Cal.4th at p. 1061.) Furthermore, public safety officers are compensated through public benefits for injuries sustained in the line of duty. If they were also permitted

private recovery for those injuries, the public would in effect pay the bill twice: first through taxes and then from insurance. (*Calatayud, supra,* at p. 1062; *Walters, supra,* at p. 206; see *Hodges v. Yarian* (1997) 53 Cal.App.4th 973, 985 [62 Cal.Rptr.2d 130] (*Hodges*) ["When a peace officer assumes responsibility for performing such functions and is injured in the process, his or her recourse is in the system of 'special public benefits' established to compensate the officer for such injuries."].)

Our Legislature has carved out an exception to the firefighter's rule in section 1714.9, subdivision (a), which reads in relevant part: "Notwithstanding statutory or decisional law to the contrary, any person is responsible not only for the results of that person's willful acts causing injury to a peace officer . . . employed by a public entity, but also for any injury occasioned to that person by the want of ordinary care or skill in the management of the person's property or person, in any of the following situations: [¶] (1) Where the conduct causing the injury occurs after the person knows or should have known of the presence of the peace officer . . . . [or] [¶] . . . [¶] (3) Where the conduct causing the injury was intended to injure the peace officer . . . ."

The language of section 1714.9 is clear and unambiguous. It permits recovery against a defendant, notwithstanding the firefighter's rule, for injuries caused by *that person's* willful or negligent acts, committed after he knew or should have known of the officer's presence (or committed with an intent to injure the officer). (See *Calatayud, supra,* 18 Cal.4th at p. 1068 [phrase "any person" in § 1714.9 pertained to the person "whose original misconduct occasioned an officer's presence and whose subsequent acts caused injury," and not to a fellow public safety officer jointly engaged in combating the emergency]; *Hodges, supra,* 53 Cal.App.4th at p. 985 [§ 1714.9 inapplicable to apartment building owners because they were not present and did not know of plaintiff's presence].) Section 1714.9 therefore "reimpose[s] a duty of ordinary care (see . . . § 1714 [Deering's]), which would otherwise be abrogated by the firefighter's rule." (*Calatayud, supra,* at p. 1068.)

■ Under the facts of the present case, Wisan would be subject to the section 1714.9 exception to the firefighter's rule. By throwing hot oil onto Noy and Yamaguchi, Wisan willfully or negligently caused injuries to both men. Wisan committed this act after he knew or should have known the police were present. For example, Yamaguchi and Flores both yelled "police" after they entered the restaurant. The record indicates Wisan understood English, as he complied with the officers' commands in English to stand up, back up, and ultimately to drop the pot. In addition, the officers

were in full police uniform; Wisan's vision was sufficient for him to observe this, despite the blood dripping down his forehead, as he was certainly able to locate a pot from the stove, fill the pot twice with hot oil, and toss it in Noy's direction. Consequently, notwithstanding the firefighter's rule, Wisan owed a duty of care to Yamaguchi.[5] (See *Calatayud, supra,* 18 Cal.4th at p. 1068.)

### B. *Appellants' Liability*

At the outset, we point out that appellants did not themselves commit any act that would bring them within the section 1714.9 exception to the firefighter's rule. Appellants did not throw the oil at Yamaguchi, and there was no evidence that appellants committed any act that otherwise proximately caused the officer's injuries. ▮ We therefore turn to the question of appellants' liability under the doctrine of respondeat superior.

### 1. *Respondeat Superior*

▮ Under the doctrine of respondeat superior, an innocent employer may be liable for the torts its employee commits while acting within the scope of his employment. This liability is based not on the employer's fault, but on public policies concerning who should bear the risk of harm created by the employer's enterprise. It is considered unjust, for example, for an employer to disclaim responsibility for injuries occurring in the course of its characteristic activities. (*Mary M. v. City of Los Angeles* (1991) 54 Cal.3d 202, 208 [285 Cal.Rptr. 99, 814 P.2d 1341] (*Mary M.*).) Moreover, losses caused by employees' torts are viewed as a required cost of doing business, the risk of which an employer may spread through insurance. (*John R. v. Oakland Unified School Dist.* (1989) 48 Cal.3d 438, 450 [256 Cal.Rptr. 766, 769 P.2d 948].)

In light of this purpose, the determining factor in ascertaining whether an employee's act falls within the scope of his employment for respondeat superior liability is not whether the act was authorized by the employer, benefited the employer, or was performed specifically for the purpose of fulfilling the employee's job responsibilities. (*Lisa M. v. Henry Mayo*

---

[5]The firefighter's rule also does not apply to conduct other than that which necessitated the summoning of the police officer, or independent acts of misconduct committed after the officer arrived at the scene. (*Neighbarger v. Irwin Industries, Inc., supra,* 8 Cal.4th at p. 538.) Here, Wisan's assault upon Noy prompted the call to police. Although he initiated his assault upon Noy with a knife, and then changed his weapon of choice to hot oil after the police arrived, the entirety of events comprised one continuing fight. Thus, throwing the hot oil was a different act than stabbing Noy, but it was not *independent* of the conduct prompting the call to police. We therefore do not base our ruling on the doctrine of independent acts.

*Newhall Memorial Hospital* (1995) 12 Cal.4th 291, 297-299 [48 Cal.Rptr.2d 510, 907 P.2d 358] (*Lisa M.*).) Rather, the question is whether the risk of such an act is typical of or broadly incidental to the employer's enterprise. (*Farmers Ins. Group v. County of Santa Clara* (1995) 11 Cal.4th 992, 1003 [47 Cal.Rptr.2d 478, 906 P.2d 440] (*Farmers Ins. Group*).)

■ An employer may therefore be vicariously liable for the employee's tort—even if it was malicious, willful, or criminal—if the employee's act was an "outgrowth" of his employment, " ' "inherent in the working environment," ' " " ' "typical of or broadly incidental to" ' " the employer's business, or, in a general way, foreseeable from his duties. (*Lisa M., supra,* 12 Cal.4th at pp. 296, 298-299.) By contrast, an employer will *not* be held liable under the respondeat superior doctrine for conduct that occurs when the employee "substantially deviates from the employment duties for personal purposes" or acts out of personal malice unconnected with the employment, or where the conduct is " ' "so unusual or startling that it would seem unfair to include the loss resulting from it among other costs of the employer's business.' " (*Farmers Ins. Group, supra,* 11 Cal.4th at pp. 1003-1005, italics omitted; see, e.g., *Thorn v. City of Glendale* (1994) 28 Cal.App.4th 1379, 1383 [35 Cal.Rptr.2d 1] [city not vicariously liable where fire marshal set business premises on fire during an inspection]; see generally § 2338 [codification of respondeat superior doctrine].)

Whether an employee's actions were within the scope of his employment is a question of fact, and it was Yamaguchi's burden as plaintiff to prove that Wisan's acts were within the scope of his employment. (*Ducey v. Argo Sales Co.* (1979) 25 Cal.3d 707, 721, 722 [159 Cal.Rptr. 835, 602 P.2d 755] (*Ducey*).) ■ Yamaguchi certainly produced evidence to this effect. For example, Wisan's relationship with Noy arose from their employment at the restaurant, as they did not socialize outside of work. The two had engaged in work-related disputes previously, most recently a few days before the attack, and on one occasion Wisan told Noy he would strike him with a knife. From this it could be inferred that the stabbing arose from a work-related dispute, which escalated to the point that Wisan threw the hot oil, injuring Yamaguchi. While Wisan's conduct was obviously not part of his job description, a reasonable trier of fact *could* find that a cook's use of a knife and hot oil to attack his assistant in the kitchen after prior work-related disputes, and the injuries to persons attempting to quell the dispute, was a risk that is "broadly incidental" to the operation of a restaurant. There was, in short, *some* basis for concluding that Wisan's injurious conduct was within the scope of his employment for purposes of respondeat superior.

Nevertheless, we cannot say the evidence was so compelling that no reasonable juror could reach the opposite conclusion, or at least decide that

Yamaguchi had failed to meet the requisite burden of proof. Illuminating in this regard are the differences in evidence in the instant case and the case on which Yamaguchi and the trial court primarily relied, *Carr v. Wm. C. Crowell Co.* (1946) 28 Cal.2d 652 [171 P.2d 5] (*Carr*).

In *Carr*, a dispute arose between the plaintiff construction worker (Carr) and an employee of the defendant general contractor (Crowell) as to the procedure in laying a hardwood floor. The dispute resulted in a heated exchange of words and culminated in the employee throwing a hammer at Carr and striking him in the head. (*Carr, supra,* 28 Cal.2d at p. 653.) Our Supreme Court concluded the assault occurred within the scope of employment, because it was preceded by a work-related dispute and was therefore an outgrowth of, or engendered by, the employment. (*Id.* at p. 654.) The court explained: "Not only did the altercation leading to the injury arise solely over the performance of [the employee's] duties, but his entire association with plaintiff arose out of his employment on the building under construction. He had never seen plaintiff before the day preceding the accident, and had never conversed with him before the dispute over the plate. . . . [H]e was not angry with plaintiff before the dispute; that he had no personal grudge against him." (*Id.* at p. 657.) Further, the court observed: " 'These expressions of human nature are incidents inseparable from working together. They involve risks of injury and these risks are inherent in the working invironment.' " (*Id.* at p. 656.)

There are significant distinctions between the foregoing facts and the record we review on appeal. First, in *Carr* it was undisputed the assault occurred as the result of, and during, a dispute at work. Here, by contrast, the evidence was that Wisan and Noy had argued about work *in the past*. This evidence may give rise to an inference that the stabbing was due to a work conflict, but it does not compel such an inference as it is undisputed there was *no* work-related argument between Noy and Wisan on the morning of the stabbing.

Second, while the employee and victim in *Carr*, like Wisan and Noy, had no apparent association outside their respective employment, the employee in *Carr* had never seen his victim before the day preceding the incident and had never even conversed with him before the dispute. These circumstances precluded any inference of a personal grudge. By contrast, Wisan and Noy had known one another for 16 months, during which time a personal grudge might have arisen.

Third, while both the employee and victim testified in *Carr*, Wisan did not. Consequently, there was no direct evidence as to Wisan's state of mind

at the time of his attack on Noy and Yamaguchi.[6] For all of these reasons, the evidence adduced by Yamaguchi was by no means as compelling as the evidence in *Carr*, and was not sufficiently compelling to warrant a finding that Wisan's actions were engendered by his employment *as a matter of law*.[7]

Nor can it be said that Wisan's conduct, or the risk thereof, was *foreseeable* as a matter of law. ■ In the context of respondeat superior, foreseeability " 'merely means that in the context of the particular enterprise an employee's conduct is not so unusual or startling that it would seem unfair to include the loss resulting from it among other costs of the employer's business.' " (*Farmers Ins. Group, supra,* 11 Cal.4th at p. 1004, italics omitted.) In other words, it is not a question of whether appellants should have foreseen that Wisan would stab Noy and throw hot oil on responding officer(s), but whether the employment foreseeably created *the risk* that a cook would take such action.

■ Here again, there was evidence supporting, but not compelling, an inference of foreseeability. On the one hand, kitchen employees are likely to argue in the kitchen, and a kitchen certainly contains many items that can cause injury if the employees' altercations become physical. As the trial court observed, the conditions of a busy restaurant kitchen, "with chefs running around and waiters and waitresses running around, pots and pans and steam and heat and boiling oil," is conducive to the eruption of disputes and perhaps injuries as well. On the other hand, there was no direct evidence of these conditions at appellants' restaurant, or that such conditions precipitated Wisan's attack. We cannot say every restaurant owner should be vicariously liable for every assault perpetrated by his employees merely because the restaurant has a kitchen. (See *Lisa M., supra,* 12 Cal.4th at pp. 299-300 [hospital not vicariously liable for employee technician's sexual molestation of plaintiff during ultrasound examination, even though the employment provided the opportunity and circumstances that made the assault possible]; *Copelin v. Berlin Dye Works etc. Co.* (1914) 168 Cal. 715,

---

[6]Appellants claim they were prejudiced in this regard because the trial court refused their request to compel Wisan's testimony. They do not persuade us, on this record, that the trial court erred in denying their request.

[7]Also distinguishable is *Heiner v. Kmart Corp.* (2000) 84 Cal.App.4th 335 [100 Cal.Rptr.2d 854] (*Heiner*), in which an employer was held vicariously liable for injuries caused to a customer by its employee security guard. In *Heiner*, the employee's use of force was for the purpose of detaining the customer to recover a spindle of refund slips, and was thus unquestionably engendered by his employment. (*Id.* at p. 350.) While it is foreseeable that an employer's security guard might injure a customer, it is less foreseeable that an employer's cook would attack a police officer.

719 [144 P. 961] [dry cleaning company not vicariously liable for employee's theft of earrings from customer's clothing, even though company's operation furnished employee the opportunity to steal].)[8]

While much focus has been placed on whether Wisan's stabbing of Noy was foreseeable, a critical question is whether the act that actually caused Yamaguchi's injury—throwing hot oil in the officer's direction—was foreseeable. In this regard, it is one thing for restaurant owners to foresee that their employees' disagreements might erupt into a physical altercation in the kitchen, but quite another to foresee that their head cook would fling two pans of hot oil toward armed and uniformed officers who had responded to quell an altercation. Based on the evidence, a reasonable juror could conclude Wisan's actions were so " 'unusual or startling that it would seem unfair to include the loss resulting from it among other costs of [appellants'] business.' " (See *Farmers Ins. Group, supra,* 11 Cal.4th at p. 1004.)

Also instructive is our Supreme Court's holding in *Lisa M., supra,* 12 Cal.4th 291. There, a hospital technician sexually molested the plaintiff during an ultrasound examination. The court ruled as a matter of law the hospital was *not* vicariously liable for its employee technician's acts. Although the employment provided the employee an opportunity to have contact with the plaintiff in circumstances making the assault possible, his decision to molest her did not arise out of the performance of his job responsibilities, but was an "aberrant decision to engage in conduct unrelated to his duties." It was therefore not a foreseeable consequence from the nature of the work he was employed to perform. (*Id.* at pp. 299, 301, 303, 306.)

So too it could be said that Wisan's employment as a cook provided him with an environment that made possible his assault with a knife and hot oil. Whether his decision to perpetrate the attack arose from the performance of his job duties (as in *Carr*), or was instead a substantial deviation from those duties and unforeseeable (as in *Lisa M.*), is a factual question not conclusively resolved by the evidence.

■ Lastly, it is unclear whether imposing vicarious liability in this context would be consistent with the public policies behind the doctrine of respondeat superior: "(1) to prevent recurrence of the tortious conduct; (2) to

---

[8]The fact that the employee's tort occurred on the employer's premises is not, of course, dispositive of the issue. (See, e.g., *Martinez v. Hagopian* (1986) 182 Cal.App.3d 1223, 1229-1230 [227 Cal.Rptr. 763] [employer not vicariously liable for employee's fatal stabbing of third party on employer's premises]; *Alma W. v. Oakland Unified School Dist.* (1981) 123 Cal.App.3d 133, 140 [176 Cal.Rptr. 287] [school district not liable for custodian's rape of student in custodian's office].)

give greater assurance of compensation for the victim; and (3) to ensure that the victim's losses will be equitably borne by those who benefit from the enterprise that gave rise to the injury." (*Mary M., supra,* 54 Cal.3d at p. 209.) As to the first point, holding restaurant owners liable for injuries arising out of an employee's attack on a coworker may well encourage them to investigate and resolve simmering workplace disputes, and perhaps discipline or terminate certain employees. It is difficult to say, however, what a restaurant owner could do to assure its cook does not throw hot oil on a police officer, particularly where the cook has shown little inclination toward violence. As to the matter of assuring compensation, the liability of restaurant owners would indeed help guarantee recovery for third parties injured by their cook's attacks. Although in this particular case Yamaguchi, as a public employee, would receive workers' compensation benefits anyway, those benefits would often be less than the recovery available from the restaurant owners. Finally, as to equitably spreading the cost of such attacks, conceivably the imposition of liability under respondeat superior would spread losses among restaurant owners and to third parties, as a cost of doing business. There is, however, a question of whether insurance coverage would be available for an employee's willful criminal acts (see, e.g., Ins. Code, § 533), and there is no evidence in the record as to appellants' insurance coverage, if any, in this regard.

 In the final analysis, we must return to our Supreme Court's admonition that the determination of whether an employee has acted within the scope of employment is ordinarily a question of fact for the jury. (E.g., *Lisa M., supra,* 12 Cal.4th at p. 299; *Mary M., supra,* 54 Cal.3d at p. 213; *Ducey, supra,* 25 Cal.3d at p. 722.) Although the question becomes one of law where the evidence is undisputed and no conflicting inferences are possible (see, e.g., *Farmers Ins. Group, supra,* 11 Cal.4th at p. 1019), this is not such a case. There is plainly a factual dispute in regard to Wisan's motivation in performing the act and the causal nexus between his act and his employment. (See also *Logacz v. Limansky* (1999) 71 Cal.App.4th 1149, 1157 [84 Cal.Rptr.2d 257] [appellate court must view the evidence most favorable to the contention that appellants' requested instructions should have been given].)

We therefore must conclude that the trial court erred in ruling that Wisan's conduct was within the scope of his employment for purposes of respondeat superior as a matter of law, and, on that basis, instructing the jury that any act or omission of Wisan was in law the act or omission of appellants (BAJI No. 13.04, mod.). The consequence of this error was devastating for appellants. By instructing the jury that Wisan's actions had to be attributed to appellants, the trial judge essentially preordained a verdict

for Yamaguchi. The error was prejudicial. (See *Galvez v. Frields* (2001) 88 Cal.App.4th 1410, 1423 [107 Cal.Rptr.2d 50].)[9]

III. DISPOSITION

The judgment is vacated. Appellants shall recover their costs on appeal.

Simons, J., and Gemello, J., concurred.

Respondents' petition for review by the Supreme Court was denied June 11, 2003.

---

[9]Because we vacate the judgment on this ground, we need not, and do not, address whether the firefighter's rule precludes appellants' liability.