Filed 5/15/14

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| JOHNNY BLAINE KESNER, JR.,<br><br>    Petitioner,<br><br>v.<br><br>THE SUPERIOR COURT OF ALAMEDA COUNTY,<br><br>    Respondent;<br><br>PNEUMO ABEX LLC,<br><br>    Real Party in Interest. | A136378<br><br>(Alameda County<br>Super. Ct. No. RG11578906) |
| JOHNNY BLAINE KESNER, JR.,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>PNEUMO ABEX, LLC,<br><br>    Defendant and Respondent. | A136416 |

Johnny Blaine Kesner, Jr., appeals following the grant of a motion for nonsuit in favor of Pneumo Abex, LLC (Abex). Kesner's uncle was employed by Abex from 1973 to 2007. Kesner seeks to hold Abex liable for mesothelioma he contracted, allegedly due in part to his exposure, while present in his uncle's home, to friable asbestos that his uncle brought home from work on his clothing. In granting nonsuit in Abex's favor, the trial court, relying on the decision in *Campbell v. Ford Motor Co.* (2012) 206 Cal.App.4th 15 (*Campbell*), concluded that "Abex owed no duty to Kesner for any exposure to asbestos through contact with an employee of the Abex plant, . . . none of which exposures took place at or inside Abex's plant."

1

In defending the ruling, Abex contends that "no duty is owed [by an employer] to family members of workers for take-home exposures." We do not believe that such a broad and unqualified limitation on an employer's duty accurately states the law. We accept the premise that the prospect of "indeterminate liability" places a limitation on those to whom the duty of exercising reasonable care may extend. (E.g., *Bily v. Arthur Young & Co.* (1992) 3 Cal.4th 370, 392.) We also recognize the difficulty in articulating the limits of that duty and the different conclusions that courts throughout the country have reached when considering claims for secondary exposure to toxics, particularly asbestos, emanating from the workplace.[1] The duty of care undoubtedly does not extend to every person who comes into contact with an employer's workers, but we conclude that the duty runs at least to members of an employee's household who are likely to be affected by toxic materials brought home on the worker's clothing. While Kesner was not a member of his uncle's household in the normal sense, he was a frequent visitor, spending several nights a week in the home. After consideration of the factors specified in *Rowland v. Christian* (1968) 69 Cal.2d 108 (*Rowland*), as instructed by our Supreme Court in *Cabral v. Ralphs Grocery Co.* (2011) 51 Cal.4th 764 (*Cabral*), we conclude that the likelihood of causing harm to a person with such recurring and non-incidental contact with the employer's employee, in this case Kesner's uncle, is sufficient to bring Kesner within the scope of those to whom the employer, in this case Abex, owes the duty to take reasonable measures to avoid causing harm.

## BACKGROUND

Kesner was diagnosed with perotineal mesothelioma in February 2011. He filed suit against a number of defendants, including Abex, to recover damages for his injuries. His complaint alleges causes of action for negligence, breach of express and implied

---

[1] See Levine, *Clearing the Air: Ordinary Negligence in Take-Home Asbestos Exposure Litigation* (2011) 86 Wash. L.Rev. 359, 360, and the cases cited therein; see also, more recently, *Clair v. Monsanto Co.* (Mo.App. 2013) 412 S.W.3d 295.

2

warranties, and strict products liability arising from his contact with asbestos manufactured or supplied to him as a worker or end user.

Kesner's claims were resolved against all other defendants, all of which apparently were companies (or their successors) for which Kesner was himself employed and exposed to asbestos at their premises. Kesner's remaining claim against Abex is based on the fact that Kesner's uncle was an Abex employee who allegedly was exposed to harmful levels of asbestos in his job. Between 1973 and 1979 Kesner was a frequent guest in his uncle's home, and often spent the night there.[2] The uncle allegedly came home in his work clothes covered in asbestos dust. While he was still in his work clothes, Kesner's uncle would often play with Kesner and sometimes sleep near him. Kesner alleges that his exposure to the asbestos dust on his uncle's clothing contributed to his contracting mesothelioma.

At the beginning of trial, Abex moved for a nonsuit. Abex argued that it had no legal duty to prevent asbestos exposure to Kesner under the rule announced in *Campbell, supra,* 206 Cal.App.4th 15. The superior court granted Abex's motion for nonsuit and entered a final judgment in its favor, holding that Abex owed Kesner no duty for his exposure to asbestos resulting from Kesner's contact with its employee.

Kesner initiated proceedings in this court with a petition for a writ of mandate. The same day he also filed a notice of appeal in the superior court. This court determined that the writ review process is appropriate in this situation to expedite consideration of this issue to the extent possible due to Kesner's declining health.

---

[2] When asked at his deposition how often he would see his uncle, Kesner testified, "In my childhood, once or twice a week. As I got later into my teens, three to four times a week. I mean, once I got my driver's license, it seemed like I was up there all the time." When asked how often he stayed at his uncle's house, he answered, "During my teen years, every once in a while. Once I joined the service, I would come home, and that's . . . where I stayed when I came home." When the uncle was asked how often he saw Kesner when the uncle was employed at Abex, the uncle testified "he probably stayed at my house on average of three days a week. Sometimes it might only [have] been one time. Sometimes it might have been a whole week. But I'd say on average of three days a week."

Abex moved to stay the appeal pending outcome of the writ proceeding. On December 21, 2012, this court stated that if no objections were filed within 10 days, it would consolidate the appeal, *Kesner v. Pneumo Abex, LLC,* A136416, with the writ proceeding, *Kesner v. Superior Court,* A136378, deem the return and traverse filed in the writ proceeding to be the respondent's brief and appellant's reply brief in the appeal, and consider the appeal to be fully briefed. No objections were filed, and the cases are now consolidated with the briefing in the writ proceeding serving to complete briefing in the appeal.

We granted requests of the Association of Defense Counsel of Northern California and Nevada and the Association of Southern California Defense Counsel to file an amicus brief and allowed petitioner an opportunity to respond, which he did not do.

## DISCUSSION

We independently review an order granting a nonsuit and will not affirm the judgment unless, after interpreting the evidence most favorably in favor of the plaintiff and against the defendant, a judgment for the defendant was required as a matter of law. (*Pinero v. Specialty Restaurants Corp.* (2005) 130 Cal.App.4th 635, 639.) Such is not the case here.

This case involves the asserted liability of a negligent manufacturer to a plaintiff for injuries arising as a result of the plaintiff's exposure to a harmful substance through contact with the manufacturer's employee away from the manufacturer's premises. Cases commonly refer to this situation as presenting a claim of secondary, para-occupational, or take-home exposure to a harmful substance. (See *Oddone v. Superior Court* (2009) 179 Cal.App.4th 813, 821; *Bettencourt v. Hennessy Industries, Inc.* (2012) 205 Cal.App.4th 1103, 1107.)

"The general rule in California is that '[e]veryone is responsible . . . for an injury occasioned to another by his or her want of ordinary care or skill in the management of his or her property or person. . . .' (Civ. Code, § 1714, subd. (a).) In other words, 'each person has a duty to use ordinary care and "is liable for injuries caused by his failure to

4

exercise reasonable care in the circumstances." ' " (*Cabral, supra,* 51 Cal.4th at p. 771.) But departures from the general rule favoring liability are warranted when clearly supported by public policy. (*Rowland, supra,* 69 Cal.2d at p. 112.)

"A departure from this fundamental principle involves the balancing of a number of considerations; the major ones are the foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and the prevalence of insurance for the risk involved." (*Rowland, supra,* 69 Cal.2d at pp. 112-113.) Application of the factors identified in *Rowland* is the starting point for analysis of whether to impose a duty of care in a secondary exposure case like this one. (*Oddone v. Superior Court, supra,* 179 Cal.App.4th at p. 819.)

There is "an important feature of the analysis" that must be taken into account when we apply *Rowland.* (*Cabral, supra,* 51 Cal.4th at p. 772.) "[T]he *Rowland* factors are evaluated at a relatively broad level of factual generality. Thus, as to foreseeability, [our Supreme Court has] explained that the court's task in determining duty 'is not to decide whether a *particular* plaintiff's injury was reasonably foreseeable in light of a particular defendant's conduct, but rather to evaluate more generally whether the category of negligent conduct at issue is sufficiently likely to result in the kind of harm experienced that liability may be appropriately imposed. . . .' [Citations.] [¶] . . . [¶] By making exceptions to Civil Code section 1714's general duty of ordinary care only when foreseeability and policy considerations justify a categorical no-duty rule, we preserve the crucial distinction between a determination that the defendant owed the plaintiff no duty of ordinary care, which is for the *court* to make, and a determination that the defendant did not breach the duty of ordinary care, which in a jury trial is for the *jury* to make." (*Cabral,* p. 772.)

5

In *Campbell,* the court weighed the various *Rowland* factors and concluded that "a *property owner* has no duty to protect family members of workers on its premises from secondary exposure to asbestos used during the course of the property owner's business." (*Campbell, supra,* 206 Cal.App.4th at p. 34; italics added.) The court correctly noted that "In California, '[f]orseeability *and extent of burden to the defendant . . .* have evolved to become the primary [*Rowland*] factors' to be considered on the question of legal duty." (*Campbell,* p. 33.) Focusing on the obligations of a premises owner, the court noted that " 'Generally speaking, where the injury suffered is connected only distantly and indirectly to the defendant's negligent act, the risk of that type of injury from the category of negligent conduct at issue is likely to be deemed unforeseeable.' " (*id.* at pp. 29-30, quoting *Cabral, supra,* 51 Cal.4th at p. 779) and that "while [the plaintiff in that case] seeks to hold Ford liable for its management of its premises, it is undisputed that [the plaintiff] never set foot on those premises . . . . A property owner's duty to maintain its premises in a reasonably safe condition extends to all areas visitors are expressly or impliedly invited to use and over which the owner exercise actual or apparent control . . . a property owner is 'not ordinarily liable for injuries that occur on property not in his ownership, possession, or control unless he created the condition or had a right to control activities at the site.' " (*Campbell*, *supra,* at p. 30.)

The court in *Campbell* deemed "the extent of the burden to the defendant and the consequences to the community if the court imposes on a particular defendant a duty of care toward the plaintiff [to] weigh heavily against [the plaintiff]." (*Campbell, supra,* 206 Cal.App.4th at p. 32.) The court quoted approvingly from *Oddone v. Superior Court, supra,* 179 Cal.App.4th at pp. 822-823: " 'The gist of the matter is that imposing a duty toward nonemployee persons saddles the defendant employer with a burden of uncertain but potentially very large scope. One of the consequences to the community of such an extension is the cost of insuring against liability of unknown but potentially massive dimension. Ultimately, such costs are borne by the consumer. In short, the burden on the defendant is substantial and the costs to the community may be considerable.' "

(*Campbell*, p. 33.) The court also quoted from a Michigan decision concluding that " 'imposing a duty on a landowner to anybody who comes in contact with somebody who has been on the landowner's property' (and secondarily exposed to asbestos as a result) ' "would create a potentially limitless pool of plaintiffs." ' " (*Id.* at p. 34, quoting *Miller v. Ford Motor Co.* (*In re Certified Question*) (2007) 479 Mich. 498, 521 [740 N.W.2d 206, 220].)[3]

We need not question the conclusion in *Campbell* that under *Rowland* and *Cabral*, a landowner owes no duty of care to those coming into contact with persons whose clothing carries asbestos dust from the landowner's premises. The claim against Ford Motor Company asserted in *Campbell* was based on Ford's passive involvement as owner of the plant in which an independent contractor was installing asbestos insulation. Plaintiff's claim in the present case is not based on a theory of premises liability but on a claim of negligence in the manufacture of asbestos-containing brake linings. While the same *Rowland* factors are pertinent to the analysis of a negligence claim, the balance that must be struck is not necessarily the same as under a claim of premises liability. The norm in considering negligence claims is the general duty to use reasonable care to avoid injuring others. When considering the scope of an employer's obligations under the concept of respondeat superior for harm to others caused by an employee, the focus is on whether "the employee's act was an 'outgrowth' of his employment, ' " 'inherent in the working environment,' " ' ' " 'typical of or broadly incidental to" ' "the employer's business, or, in a general way, foreseeable from his duties." (*Yamaguchi v. Harnsmut* (2003) 106 Cal.App.4th 472, 482.) The same questions are pertinent to the scope of an employer's duty of care to others injured by interaction with the employer's workers.

Consideration of the *Rowland* factors as they bear on a negligence claim does not lead to the conclusion that an employer responsible for exposing its employees to a toxin

---

[3] The court also quoted other out-of-state authority reaching the same conclusion with respect to negligence claims. It also recognized the split of authority on this issue among the states. (*Campbell, supra,* 206 Cal.App.4th at pp. 33-34.)

such as asbestos, or for failing to warn or take reasonable protective measures, bears no responsibility to *any* nonemployee foreseeably affected by exposure to the toxin. Without discussion, the contrary has been assumed in prior reported cases (e.g., *Bettencourt v. Hennessy Industries Inc.*, *supra*, 205 Cal.App.4th 1103) and in numerous cases resolved in our trial courts without appeals having been taken. This is so for good reason. The first three factors identified in *Rowland* are related and tend to support extension of the employer's duty beyond its employees. As a general matter, harm to others resulting from secondary exposure to asbestos dust is not unpredictable. The harm to third parties that can arise from a lack of precautions to control friable asbestos that may accumulate on employees' work clothing is generally foreseeable. There often is no doubt that a plaintiff, like Kesner, suffering from malignant mesothelioma, has suffered injury due to exposure to friable asbestos. Whether exposure from any particular source was a substantial factor in causing a plaintiff's injury may often be questionable (see *Rutherford v. Owens-Illinois, Inc.* (1997) 16 Cal.4th 953, 977), but that uncertainty exists with respect to many exposure claims, whether direct or secondary.

Moral blame, the fourth of the factors identified in *Rowland,* also tends to support extension of an employer's responsibility to more than its employees. Assuming, as we must, the truth of Kesner's allegation that Abex was aware of the risks to those exposed directly or indirectly to the asbestos dust generated in its facility and took no steps to avoid those risks, certainly such indifference would be morally blameworthy. What Abex actually knew and the sufficiency of steps it may have taken to prevent harmful exposure goes to the question of whether Abex was in fact negligent as Kesner alleges, but Abex's denials do not bear on the "relatively broad level of factual generality" (*Cabral, supra,* 51 Cal.4th at p. 772) that bears on the existence of a duty.

*Rowland* also instructs that we are to consider whether imposing a duty of care will advance a policy of preventing future harm. It may be true, as the court observed in *Campbell, supra,* 206 Cal.App.4th at page 33, that asbestos is already the subject of strict regulation under both federal and California law. And in *Taylor v. Elliott*

8

*Turbomachinery Co. Inc.* (2009) 171 Cal.App.4th 564, 595, the court observed that "exposures have already taken place, and in light of the heavily regulated nature of asbestos today, it is most unlikely that holding [the supplier of non-asbestos products] liable for failing to warn of the danger [of asbestos contained in products manufactured and supplied by others] will do anything to prevent future asbestos-related injuries." (Fn. omitted.) Yet, asbestos is not the only toxin to which an employer's obligations apply. A rule of law that holds an employer responsible to avoid injury to nonemployees who may foreseeably be harmed by exposure to toxins disseminated in its manufacturing process can be expected to prevent harm to others in the future. As the Missouri Court of Appeals stated in applying California law to a claim of indirect injury against a chemical manufacturer, "the imposition of a duty serves as a warning for manufacturers creating potentially dangerous products to be cautious." (*Clair v. Monsanto Co., supra,* 412 S.W.3d at p. 309.)

It is the next two *Rowland* factors—the extent of the burden to the defendant and the consequences to the community if the court imposes too broad a duty—that have led California courts to limit the reach of liability even for injuries that are foreseeable. The leading authority for such a limitation, in a very different context, undoubtedly is *Bily v. Arthur Young & Co.*, *supra,* 3 Cal.4th 370. There, our Supreme Court pointed out that "[e]ven when foreseeability was present" it had previously "declined to allow recovery on a negligence theory when damage awards threatened to impose liability out of proportion to fault or to promote virtually unlimited responsibility for intangible injury." (*Id.* at p. 398.) In that case, the court refused to impose third party liability on financial auditors because of "the spectre of vast numbers of suits and limitless financial exposure" out of proportion to their potential fault. (*Id.* at p. 400.) Similarly, in refusing to permit an unmarried cohabitant to recover damages for emotional distress caused by the negligence of another in his immediate presence, the court quoted from Prosser, Law of Torts: " '[I]f recovery [for mental distress] is to be permitted, there must be some limitation. It would be an entirely unreasonable burden on all human activity if the defendant who has

9

endangered one man were to be compelled to pay for the lacerated feelings of every other person disturbed by reason of it, including every bystander shocked at an accident, and every distant relative of the person injured, as well as his friends." (*Elden v. Sheldon* (1988) 46 Cal.3d 267, 276, quoting Prosser, Law of Torts (3d ed. 1964) § 55, pp. 353-354; see also*, e.g., Thing v. La Chusa* (1989) 48 Cal.3d 644, 668.)

The need to place a limit on those to whom the duty of reasonable care extends in contexts much closer to the situation in the present case was the determinative factor in both *Campbell* and *Oddone.* Those cases also relied on the final *Rowland* factor, the relative cost and availability of insurance covering the particular risk. The threat of unlimited liability, those courts felt, could restrict the ability of employers to obtain insurance, while individuals may obtain insurance covering medical expenses incurred as a result of illness arising from toxic exposure.

In weighing these competing considerations, the balance falls far short of terminating liability at the door of the employer's premises. While foreseeability of harm is not in California the exclusive consideration, it is among the most significant, if not the single most significant, factor. And there is a high degree of foreseeability of harm from secondary, or take-home, exposure to those whose contact with an employer's workers is not merely incidental, such as members of their household or long-term occupants of the residence. The weight of this factor is strengthened by consideration of the moral blame attributable to disregarding a known risk to others and the important public policy of preventing future harm. On the other hand, extending the employer's duty of care to such persons does not threaten employers with potential liability for an intangible injury that can be claimed by an unlimited number of persons. Unlike indirect financial loss or mental anguish that were of concern in *Bily* and *Elden*, mesothelioma (in particular, and other toxic-related diseases in general) can hardly be claimed by everyone. Nor is there reason to believe that manufacturers cannot obtain insurance coverage to protect against their liability, while individuals cannot purchase insurance covering loss of income or their own pain and suffering resulting from a toxic-induced illness such as mesothelioma.

10

In concluding that Abex's duty of care extends to Kesner, a long-term guest in the home of Abex's employee, we emphasize that our ruling is based on the assumption, required by the standard for reviewing the sufficiency of the allegations of a complaint, that Kesner's contact with his uncle was extensive. As to such persons, the forseeability of harm is substantial. As to persons whose contact with an employer's worker is only casual or incidental, the forseeability of harm and the closeness of the connection between the defendant's conduct and the plaintiff's injury may be so minimal as to produce a different balance of the *Rowland* factors. We hold that there is a duty under the circumstances alleged in the present case, but we do not address other circumstances that are not before us.

Finally, in holding that a duty exists in this case, we emphasize the obvious — that the existence of the duty is not the same as a finding of negligence. Abex apparently disputes many of the facts alleged in plaintiff's complaint, including the extent of its knowledge at the time in question, the reasonableness of the measures it took to prevent asbestos from being carried home on the clothing of its employees, and the extent to which asbestos from its plant played any role in causing Kesner's mesothelioma. Needless to say, these are factual questions left for future determination, as to which we express no opinion.

## DISPOSITION

The judgment is reversed.

_____
Pollak, Acting P.J.

We concur:

_____
Siggins, J.

_____
Jenkins, J.

11

Superior Court of Alameda County, No. RG11578906, John M. True III, Judge.

| | |
|---|---|
| Counsel for Appellant<br>Johnny Blaine Kesner, Jr.: | WEITZ & LUXENBERG, P.C.<br>Benno Ashrafi<br>Cindy Saxey<br>Josiah Parker<br>Ted W. Pelletier |
| Counsel for Real Party in Interest<br>Pneumo Abex LLC: | BRYDON HUGO & PARKER<br>Edward R. Hugo<br>James C. Parker<br>Jeffrey Kaufman |
| Counsel as Amicus Curiae<br>on behalf of Pneumo-Abex, LLC. | GORDON & REES LLP<br>Don Willenburg<br>Association of Defense Counsel of Northern<br>California and Nevada<br><br>HORVITZ & LEVY, LLC<br>Curt Cutting<br>Steven Fleishman<br>Association of Southern California Defense<br>Counsel |