[No. C047905. Third Dist. Aug. 31, 2005.]

DEAN HARTLINE, Plaintiff and Appellant, v.
KAISER FOUNDATION HOSPITALS, Defendant and Respondent.

**COUNSEL**

The Arns Law Firm, Morgan C. Smith and Robert S. Arns for Plaintiff and Appellant.

The Law Office of Marion's Inn, Kennedy P. Richardson, Eugene Chang; The Law Office of Craddick, Candland & Conti, Jeffrey A. Harper and S. Bradford Harper for Defendant and Respondent.

**OPINION**

**CANTIL-SAKAUYE, J.**—Plaintiff Dean Hartline (Hartline) sued Ann Collins (Collins) and her employer Kaiser Permanente for personal injuries following a car accident. After the trial court granted the motion of Kaiser Foundation Hospitals (sued as Kaiser Permanente, hereafter Kaiser) for summary adjudication of Hartline's vicarious liability cause of action, Hartline dismissed his remaining premises liability cause of action against Kaiser and judgment was entered in Kaiser's favor. Kaiser filed a memorandum of costs including a request for expert witness fees based on plaintiff's failure to accept its offer made pursuant to Code of Civil Procedure section 998.[1] Hartline filed a notice of appeal from the judgment and then a motion to tax Kaiser's costs for medical records and expert witness fees, claiming as to the expert witness fees Kaiser's section 998 offer was not made in good faith. The trial court denied Hartline's objection that the section 998 offer was not

---

[1] Further undesignated statutory references are to this code.

made in good faith and granted Kaiser its postoffer expert witness fees of $1,600. Hartline filed a second notice of appeal from the award of costs.

On appeal Hartline contends the trial court erred in (1) granting Kaiser's motion for summary adjudication on his vicarious liability claim because the "premises line" rule from the area of workers' compensation law should apply to Hartline's respondeat superior claim, and (2) finding Kaiser's section 998 offer was made in good faith. We reject Hartline's claims and shall affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

Collins was employed in August 2002 as a staff physical therapist in the Orthopedics Clinic at Kaiser Hospital on Morse Avenue in Sacramento. Collins left her home about 7:15 a.m. on August 8, 2002, to drive to work. As she turned left off the street into the driveway to Kaiser's parking lot, she struck Hartline and his dog as they were walking across the driveway.

Kaiser does not pay for any of Collins's transportation costs or car insurance. Collins's regular work hours at the Morse Avenue facility were 8:30 a.m. to 5:00 p.m., Monday through Friday. The accident occurred shortly before 8:00 a.m.

Hartline filed a civil complaint alleging negligence against both Collins and Kaiser and premises liability against Kaiser.

Kaiser brought a motion for summary adjudication of the negligence cause of action, claiming there were no triable issues of fact as to Kaiser because the application of the "going-and-coming" rule precluded it from being vicariously liable for Collins's actions. Hartline opposed the motion for summary adjudication, contending a triable issue of material fact existed as to whether Collins was acting in the scope of her employment at the time of the accident. Hartline contended the "premises line" rule, recognized in workers' compensation law for purposes of applying the going-and-coming rule, should be applied to this case involving respondeat superior. The trial court granted Kaiser's motion. Hartline filed a motion for reconsideration and relief from excusable neglect under section 473, which Kaiser opposed and the trial court denied.

Approximately four months later, Kaiser sent an offer to compromise pursuant to section 998 to Hartline. Kaiser offered to waive costs in exchange for the entry of a request for dismissal with prejudice.

The following day, Hartline sent Kaiser a request for a stipulation allowing dismissal of the remaining cause of action against Kaiser and entry of

judgment in favor of Kaiser for the purpose of allowing appeal of the summary adjudication decision.

Hartline did not accept Kaiser's offer to compromise and Kaiser did not sign Hartline's stipulation for dismissal and judgment. After Hartline's motion for dismissal of the remaining cause of action was denied by the trial court, Hartline filed a request for dismissal of the "cause of action for direct negligence against defendant Kaiser Permanente only." Dismissal was entered. Subsequently, judgment was entered for Kaiser.

Kaiser filed a memorandum of costs seeking a total of $7,214 in costs, including $2,632 in expert witness fees pursuant to section 998. Hartline filed a motion to tax costs, arguing with regard to the claim for expert witness fees that the section 998 offer was not made in good faith and there was no proof the requested fees were all incurred after the section 998 offer was made. Kaiser opposed the motion to tax its costs, although it reduced its claim for expert witness fees to $1,600.

## DISCUSSION

### I.

### THE TRIAL COURT DID NOT ERR IN FAILING TO APPLY THE "PREMISES LINE" RULE

*A. Standard of Review for Summary Adjudication*

A motion for summary judgment shall be granted when "all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (§ 437c, subd. (c).) Summary adjudication works the same way, except it acts on specific causes of action or affirmative defenses, rather than on the entire complaint. (§ 437c, subd. (f).) A summary adjudication is properly granted only if a motion therefor completely disposes of a cause of action, an affirmative defense, a claim for damages, or an issue of duty. (§ 437c, subd. (f)(1).) Motions for summary adjudication proceed in all procedural respects as a motion for summary judgment. (§ 437c, subd. (f)(2).) **(2)** We review rulings on motions for summary judgment and summary adjudication de novo, applying the same rules and procedures. (*Lunardi v. Great-West Life Assurance Co.* (1995) 37 Cal.App.4th 807, 819 [44 Cal.Rptr.2d 56]; *Westlye v. Look Sports, Inc.* (1993) 17 Cal.App.4th 1715, 1726–1727 [22 Cal.Rptr.2d 781].)

We decide the question on appeal from summary adjudication using the same method as the trial court. A motion for summary judgment or

summary adjudication shall be granted "if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. In determining whether the papers show that there is no triable issue as to any material fact the court shall consider all of the evidence set forth in the papers, except that to which objections have been made and sustained by the court, and all inferences reasonably deducible from the evidence . . . ." (§ 437c, subd. (c).) A defendant has met its burden of showing a cause of action has no merit if it "has shown that one or more elements of the cause of action . . . cannot be established, or that there is a complete defense to that cause of action. Once the defendant . . . has met that burden, the burden shifts to the plaintiff . . . to show that a triable issue of one or more material facts exists as to that cause of action or a defense thereto. The plaintiff . . . may not rely upon the mere allegations or denials of its pleadings to show . . . a triable issue of material fact exists but, instead, shall set forth the specific facts showing that a triable issue of material fact exists . . . ." (*Id.*, subd. (p)(2).) ▮ On review of an order granting or denying summary judgment or summary adjudication, "we examine the facts presented to the trial court and determine their effect as a matter of law." (*Parsons v. Crown Disposal Co.* (1997) 15 Cal.4th 456, 464 [63 Cal.Rptr.2d 291, 936 P.2d 70].)

"The trial court's stated reasons supporting its ruling . . . do not bind this court. We review the ruling, not its rationale." (*Szadolci v. Hollywood Park Operating Co.* (1993) 14 Cal.App.4th 16, 19 [17 Cal.Rptr.2d 356].)

B. *The Trial Court's Summary Adjudication of Hartline's Negligence Cause of Action Against Kaiser*

▮ "The rule of respondeat superior is familiar and simply stated: an employer is vicariously liable for the torts of its employees committed within the scope of the employment. [Citation.]" (*Lisa M. v. Henry Mayo Newhall Memorial Hospital* (1995) 12 Cal.4th 291, 296 [48 Cal.Rptr.2d 510, 907 P.2d 358].) The plaintiff has the burden of proof to demonstrate the negligent act of the employee was committed within the scope of employment. (*Ducey v. Argo Sales Co.* (1979) 25 Cal.3d 707, 721 [159 Cal.Rptr. 835, 602 P.2d 755]; *Yamaguchi v. Harnsmut* (2003) 106 Cal.App.4th 472, 482 [130 Cal.Rptr.2d 706].) Whether an act is within the scope of employment is a question of fact, unless the facts are undisputed and no conflicting inferences are possible, in which case the question is one of law. (*Lisa M. v. Henry Mayo Newhall Memorial Hospital, supra,* at p. 299; *John Y. v. Chaparral Treatment Center, Inc.* (2002) 101 Cal.App.4th 565, 574 [124 Cal.Rptr.2d 330].)

▮ Under the going-and-coming rule, an employee going to or coming home from work is "ordinarily considered outside the scope of employment

so that the employer is not liable for his torts." (*Hinman v. Westinghouse Elec. Co.* (1970) 2 Cal.3d 956, 961 [88 Cal.Rptr. 188, 471 P.2d 988] (*Hinman*).) "The 'going and coming' rule is sometimes ascribed to the theory that the employment relationship is 'suspended' from the time the employee leaves until he returns [citation], or that in commuting he is not rendering service to his employer. [Citation.]" (*Ibid.*)

Kaiser claimed in its motion for summary adjudication it could not be vicariously held liable under the rule of respondeat superior based on the going-and-coming rule. According to Kaiser, the undisputed evidence established Collins was going to work from her home at the time of the accident. Kaiser contended none of the established exceptions to the going-and-coming rule applied because Collins was not on a special errand for Kaiser, Kaiser did not defray Collins's travel expenses and did not compensate her for her travel time, and Kaiser did not require Collins, as a condition of her employment, to commute to work in her personal car.

Hartline argued the going-and-coming rule did not preclude liability because a triable issue of material fact existed as to whether Collins was acting within the scope of employment based on the "premises rule" as explained by the court in *Santa Rosa Junior College v. Workers' Comp. Appeals Bd.* (1985) 40 Cal.3d 345, 353 [220 Cal.Rptr. 94, 708 P.2d 673] (*Santa Rosa*).

The trial court granted Kaiser's motion for summary adjudication based on Hartline's failure to demonstrate the existence of a triable issue of material fact after Kaiser presented facts showing the applicability of the going-and-coming rule. The trial court stated: "Even if the court were to apply [the premises line] rule here, a factual predicate is 'close proximity' to the workplace, e.g., 'the parking lot used by employees.' Here, however, Collins allegedly struck plaintiff just off the street, at the entrance to the parking lot, not in the parking lot itself. . . . The 'premises line' rule, therefore, could not apply."

## C. *The "Premises Line" Rule*

In *Santa Rosa, supra,* 40 Cal.3d 345, a college instructor was killed in an accident while driving his personal car home from work. The California Supreme Court applied the going-and-coming rule, reversing the Workers' Compensation Appeals Board award of workers' compensation death benefits to the instructor's widow. The Supreme Court stated, "the facts in this case do not fit convincingly into any of the established limitations or exceptions. . . . Because [the instructor's] accident occurred miles away from the [college] campus, exceptions to the 'premises line' doctrine cannot reasonably be invoked to render the going and coming rule inapplicable." (*Id.* at p. 353, fn. omitted.)

Although the "premises line" rule was not applicable, the California Supreme Court in *Santa Rosa* explained in a footnote the substance of the rule as it had been applied in workers' compensation law. "For purposes of applying the going and coming rule, the employment relationship begins when the employee enters the employer's premises." (*Santa Rosa, supra,* 40 Cal.3d at p. 353, fn. 11.) Indeed, "injuries sustained in close proximity to the employer's premises may, in fact arise out of the employment, especially when the accident occurs in the parking lot used by employees or on public property immediately adjacent to the workplace. Recognizing this, we have defined the course of employment to include a 'reasonable margin of time and space necessary to be used in passing to and from the place where the work is to be done.' "[2] (*Ibid.*; see *Lewis v. Workers' Comp. Appeals Bd.* (1975) 15 Cal.3d 559, 561 [125 Cal.Rptr. 353, 542 P.2d 225]; see *Pacific Indem. Co. v. Industrial Acc. Com.* (1946) 28 Cal.2d 329, 337 [170 P.2d 18].)

Hartline argues the "premises line" rule, as used in workers' compensation law, should apply to this case involving respondeat superior, although no published case has previously so applied the rule. Hartline argues this result should follow from the California Supreme Court's statements (1) that the test under workers' compensation law for whether an injury arises "out of and in the course of . . . employment" (Lab. Code, § 3600) is *closely related*

---

[2] Footnote 11 reads in its entirety as follows: "For purposes of applying the going and coming rule, the employment relationship begins when the employee enters the employer's premises. We have reaffirmed the 'premises line' rule, stating that it 'has the advantage of enabling courts to ascertain the point at which employment begins—objectively and fairly.' (*Gen. Ins. Co. v. Workmen's Comp. App. Bd. (Chairez)* 16 Cal.3d 595, 599 [128 Cal.Rptr. 417, 546 P.2d 1361].) However, injuries sustained in close proximity to the employer's premises may, in fact arise out of the employment, especially when the accident occurs in the parking lot used by employees or on public property immediately adjacent to the workplace. Recognizing this, we have defined the course of employment to include a 'reasonable margin of time and space necessary to be used in passing to and from the place where the work is to be done.' (*Lewis v. Workmen's Comp. App. Bd.*[, *supra,*] 15 Cal.3d 559, 561 [125 Cal.Rptr. 353, 542 P.2d 225], quoting *Cal. Cas. Ind. Exch. v. Ind. Acc. Com.* [(1943)] 21 Cal.2d 751, 754 [135 P.2d 158].) Where the employment itself creates a danger to employees entering or leaving the premises, we have posited a 'field of risk' or 'zone of danger,' the extent of which varies from case to case, depending on the degree to which the employer's conduct contributes directly as a proximate cause of the employee's injuries. (*Parks* [v. *Workers' Comp. App. Bd.* (1983) 33 Cal.3d 585 at p. 592 [190 Cal.Rptr. 158, 660 P.2d 382]. See, also, *Greydanus v. Ind. Acc. Com.* (1965) 63 Cal.2d 490, 493 [47 Cal.Rptr. 384, 407 P.2d 296]; *Pacific Indem. Co. v. Industrial Acc. Com. (Henslick)* (1946) 28 Cal.2d 329, 338 [170 P.2d 18].) This line of cases stems from one of the earliest attempts to circumvent or soften *Ocean Accident* [etc. *Co. v. Industrial Acc. Com.* (1916) 173 Cal. 313 [159 P. 1041]]. (See *Judson Mfg. Co. v. Ind. Acc. Com.* (1919) 181 Cal. 300, 302 [184 P. 1] ['It would be a harsh and indefensible rule that would withhold compensation from an employee engaged in traversing a dangerous pathway in his employer's building on his way to his own particular place of work therein, on the ground that he had not yet entered upon the real work of his employment'].)" (*Santa Rosa, supra,* 40 Cal.3d at p. 353, fn. 11.)

to the test for whether an employee is acting within the "scope of employment" under respondeat superior (*Hinman, supra,* 2 Cal.3d at p. 962, fn. 3), and (2) that "[i]n the 'going and coming' cases, the California courts often cite tort and workers' compensation cases interchangeably." (*Ducey v. Argo Sales Co., supra,* 25 Cal.3d at p. 722.) Hartline contends public policy favors the adoption of the premises line rule for purposes of respondeat superior. Finally, Hartline contends the trial court incorrectly stated and applied the law regarding the "premises line" rule to this case.

We reject Hartline's contention that the premises line rule should apply in civil tort cases involving the going-and-coming rule for purposes of respondeat superior and, therefore, do not need to reach his last claim.

■ The California Supreme Court in *Hinman* expressly noted the workers' compensation test for whether an injury arises out of and in the course of employment is "not identical," although it is "closely related," to the test for whether an employee is acting within the scope of employment under respondeat superior. (*Hinman, supra,* 2 Cal.3d at p. 962, fn. 3.) "[A]lthough worker's compensation cases can be helpful in determining the employer's vicarious liability for its employee's torts [citation], they are not controlling precedent 'when liability is predicated upon respondeat superior principles.' " (*Perez v. Van Groningen & Sons, Inc.* (1986) 41 Cal.3d 962, 968, fn. 2 [227 Cal.Rptr. 106, 719 P.2d 676]; see *Caldwell v. A.R.B., Inc.* (1986) 176 Cal.App.3d 1028, 1035 [222 Cal.Rptr. 494].)

■ In fact, " 'scope of employment' " for purposes of respondeat superior is more restrictive than " 'arising out of and in the course of employment' " for workers' compensation. (*Saala v. McFarland* (1965) 63 Cal.2d 124, 128–129, fn. 3 [45 Cal.Rptr. 144, 403 P.2d 400] [employee injured by coworker in parking lot received workers' compensation benefits as accident occurred on employer's premises, but coworker was not acting within scope of employment for purposes of tort liability].) That is, "[i]f an injury is within the 'scope of employment,' it will probably be 'arising out of and occurring in the course of employment'; however, *the reverse is not true.*" (*Church v. Arko* (1977) 75 Cal.App.3d 291, 300 [142 Cal.Rptr. 92] [rejects argument that the "scope of employment" for purposes of respondeat superior begins and ends with the round trip to and from the place of employment where an employee finds it convenient or even essential to use a car to travel to and from work].)

As the Court of Appeal in *Blackman v. Great American First Savings Bank* (1991) 233 Cal.App.3d 598 [284 Cal.Rptr. 491], specifically cautioned: "Workers' compensation law takes a different approach to exceptions to the going-and-coming rule . . . . [¶] . . . Workers' compensation and respondeat

superior law are driven in opposite directions based on differing policy considerations. Workers' compensation has been defined as a type of social insurance designed to protect employees from occupational hazards, while respondeat superior imputes liability to an employer based on an employee's fault because of the special relationship. [Citation.] Further, courts heed statutory admonitions for a liberal construction favoring coverage in workers' compensation cases which are not present in respondeat superior law." (*Id.* at pp. 604–605; accord, *Munyon v. Ole's Inc.* (1982) 136 Cal.App.3d 697, 702 [186 Cal.Rptr. 424] [Workers' Compensation Act is a shield protecting injured workers; vicarious tort liability is a sword extending tort liability beyond those directly and immediately negligent]; *Anderson v. Pacific Gas & Electric Co.* (1993) 14 Cal.App.4th 254, 259–260 [17 Cal.Rptr.2d 534].)

■ We conclude the premises line rule, developed in the context of the policies behind workers' compensation, does not fit the policy justification for making employers vicariously liable for their employee's torts.

The modern justification for respondeat superior is a deliberate policy allocation of risk. (*Hinman, supra,* 2 Cal.3d at p. 959.) That is, an employer's liability extends "beyond his actual or possible control over the employees to include risks inherent in or created by the enterprise because he, rather than the innocent injured party, is best able to spread the risk through prices, rates or liability insurance." (*Rodgers v. Kemper Constr. Co.* (1975) 50 Cal.App.3d 608, 618 [124 Cal.Rptr. 143] (*Rodgers*).) A risk is inherent in or created by an enterprise when "in the context of the particular enterprise an employee's conduct is not so unusual or startling that it would seem unfair to include the loss resulting from it among other costs of the employer's business. [Citations.] In other words, where the question is one of vicarious liability, the inquiry should be whether the risk was one 'that may fairly be regarded as typical of or broadly incidental' to the enterprise undertaken by the employer. [Citation.]" (*Id.* at p. 619; see *Perez v. Van Groningen & Sons, supra,* 41 Cal.3d at p. 968.) ■ "Respondeat superior liability does not attach simply because employment brought the employee and victim together at a certain time and place. [Citation.] The employee's activities must be *inherent in, typical of or created by the work* so that it is a foreseeable risk of *the particular employment.* [Citations.]" (*Tognazzini v. San Luis Coastal Unified School Dist.* (2001) 86 Cal.App.4th 1053, 1057 [103 Cal.Rptr.2d 790], italics added.) Respondeat superior assigns responsibility to the employer " 'for accidents which may fairly be said to be characteristic of its activities.' " (*Rodgers, supra,* at p. 618, quoting *Ira S. Bushey & Sons, Inc. v. Unites States* (2d Cir. 1968) 398 F.2d 167, 171.)

The risks associated with an employee's commute to and from work generally are not, absent special circumstances recognized by the exceptions

to the going-and-coming rule, inherent in, typical of, or created by their work. Certainly in this case, Collins's involvement in a car accident could not fairly be said to be characteristic of her work as a physical therapist for Kaiser. Just because employers have to employ workers and workers have to get to and from their work does not mean their commute is part of the enterprise risk of the employer. The fact that this accident just happened to occur on Kaiser's premises (driveway to the parking lot) or on public property immediately adjacent to such premises (*Santa Rosa, supra,* 40 Cal.3d 345, 353, fn. 11) does not change the character of such accident to a risk foreseeably related to Kaiser's particular employment of Collins or to the necessary operation of Kaiser's health care business. Indeed, it would be an arbitrary expansion of employer liability to assign vicarious responsibility to the employer for whatever occurs on their premises or in public areas near their premises involving an employee without regard to whether such actions were actually " 'typical of or broadly incidental' " to the employer's enterprise. (*Rodgers, supra,* 50 Cal.App.3d at p. 619.) Mere physical location of the employee is an insufficient nexus for purposes of vicarious liability.

 The trial court did not err in granting Kaiser's motion for summary adjudication of Hartline's vicarious liability cause of action. As a matter of law, Collins was not acting within the scope of her employment when she hit Hartline and his dog with her car on her way into Kaiser's parking lot.

## II.

### HARTLINE HAS NOT SHOWN THE TRIAL COURT ABUSED ITS DISCRETION IN FINDING KAISER'S SECTION 998 OFFER WAS MADE IN GOOD FAITH

Hartline contends the trial court erred in denying his objection to Kaiser's claim of expert witness costs pursuant to section 998 because Kaiser's section 998 offer was not made in good faith. We disagree.

 Pursuant to section 998, up until 10 days prior to trial, "any party may serve an offer in writing upon any other party to the action to allow judgment to be taken or an award to be entered in accordance with the terms and conditions stated at that time." (§ 998, subd. (b).) Although section 998 refers to entry of a judgment or award, an offer that provides for the plaintiff's dismissal of the action with prejudice is a valid form of offer within section 998. (*American Airlines, Inc. v. Sheppard, Mullin, Richter & Hampton* (2002) 96 Cal.App.4th 1017, 1055 [117 Cal.Rptr.2d 685].)

 A plaintiff who does not accept a valid pretrial offer to compromise and who fails to obtain a more favorable judgment or award may be required

to pay defendant's expert witness costs, so long as the section 998 offer was reasonable and made in good faith. (*Nelson v. Anderson* (1999) 72 Cal.App.4th 111, 134 [84 Cal.Rptr.2d 753].) "Whether a section 998 offer is reasonable must be determined by looking at circumstances when the offer was made. [Citation.]" (*Elrod v. Oregon Cummins Diesel, Inc.* (1987) 195 Cal.App.3d 692, 699 [241 Cal.Rptr. 108] (*Elrod*).) To be in good faith, there must be "some reasonable prospect of acceptance." (*Id.* at p. 698; accord, *Wear v. Calderon* (1981) 121 Cal.App.3d 818, 821 [175 Cal.Rptr. 566].) Where the defendant obtains a judgment more favorable than its offer, the judgment is prima facie evidence that the offer was reasonable. (*Elrod, supra,* at p. 700.) Whether the offer was made in good faith and was reasonable is left to the sound discretion of the trial court. (*Ibid.*)

"The purpose of section 998 is to encourage the settlement of litigation without trial." (*Jones v. Dumrichob* (1998) 63 Cal.App.4th 1258, 1262 [74 Cal.Rptr.2d 607].)

In this case, Hartline's first cause of action against Kaiser was summarily adjudicated. Hartline's remaining cause of action against Kaiser was for premises liability. It was scheduled for trial. On July 19, 2004, Kaiser sent Hartline a section 998 offer. Kaiser offered to "*waive any claims for costs* incurred in the litigation of this matter *in exchange for the entry of a Request for Dismissal with prejudice* on behalf of the plaintiff(s) in favor of defendant(s), KAISER FOUNDATION HOSPITALS, erroneously sued herein as KAISER PERMANENTE, providing for each party to bear their [*sic*] own respective costs and attorneys' fees." (Italics added.)

■ Hartline claimed below and now on appeal that this offer was made in bad faith. Hartline did not and does not argue the offer was not a reasonable offer to settle the remaining cause of action. "Even a modest or 'token' offer may be reasonable if an action is completely lacking in merit. [Citation.]" (*Nelson v. Anderson, supra,* 72 Cal.App.4th at p. 134.) There is no per se violation of the good faith requirement just because the offer does not tender a net monetary sum. (*Jones v. Dumrichob, supra,* 63 Cal.App.4th at p. 1264.) In a particular case, a waiver of costs may be an offer of significant value. (*Ibid.*) Indeed, Hartline's request for stipulation to dismissal and eventual voluntary dismissal of his remaining cause of action without a waiver of costs is prima facie evidence the offer was reasonable. Instead, Hartline claims the offer was in bad faith because it required Hartline to waive his appellate rights as to the summary adjudication of his first cause of action.[3] Not so.

---

[3] In response to Hartline's argument of bad faith, Kaiser claims it did not know Hartline would appeal the summary adjudication decision in light of his losing both the motion for summary adjudication and motion for reconsideration. Kaiser finds it significant that the notice of appeal was not filed until two months after its section 998 offer. We cannot take this

The language of Kaiser's section 998 offer proposed a waiver of costs "in exchange for the entry of a Request for Dismissal with prejudice." At the time of the offer, there was only the second cause of action remaining for trial. Therefore, it is logical to assume the section 998 offer was referring to a dismissal with prejudice of Hartline's second cause of action, thereby settling such claim against Kaiser without trial. The offer is silent with regard to any appellate claims involving Hartline's summarily adjudicated first cause of action. The offer was not conditioned on entry of a final judgment in favor of Kaiser, or other similar language, from which a waiver of appellate rights might be implied.

Hartline, however, apparently believed the offer to include a waiver of appellate rights. Then the reasonable course of action for Hartline to have taken was to communicate his concern to Kaiser and to make a counteroffer (*Poster v. Southern Cal. Rapid Transit Dist.* (1990) 52 Cal.3d 266, 270–272 [276 Cal.Rptr. 321, 801 P.2d 1072] [counteroffer does not reject section 998 offer]) to dismiss the remaining cause of action with an express reservation of appellate rights as to the first cause of action in exchange for the waiver of costs.[4] If Kaiser rejected such counteroffer, it would be clear the original offer was intended to include a waiver of appellate rights. Hartline would have made a record supporting his belief and on his subsequent motion to tax costs, the trial court would have had to evaluate the reasonableness of Kaiser's offer in light of the included waiver of appellate rights.

In the absence of such a record, the offer appears on its face to have only included the settlement of Hartline's remaining cause of action by dismissal. In light of all the circumstances, we cannot conclude from this record Hartline has met his burden to show the trial court abused its

argument seriously. Of course Hartline's notice of appeal was not filed at the time of the section 998 offer or soon after. At that point and until September 16, 2004, there was no judgment to appeal and any notice of appeal would have been premature. (§ 904.1, subd. (a)(1).) As the time for appeal had not yet come, much less lapsed, Kaiser knew or should have known Hartline could be interested in appealing the trial court's decision on Kaiser's summary adjudication motion, particularly as Hartline was arguing for an extension of case law from the workers' compensation area to civil tort actions, a claim he might naturally wish to pursue at the appellate court level.

[4] Hartline did send Kaiser a request for stipulation for dismissal and entry of judgment for the express purpose of allowing Hartline to appeal the summary adjudication of the first cause of action. This request for stipulation was sent on July 20, 2004, the day after the section 998 offer was sent. It is not likely the section 998 offer had been received at the time the request for stipulation was sent. Moreover, the request for stipulation did not purport to be a counteroffer. It did not refer to section 998. It included no reference to a waiver of costs by Kaiser. We conclude it was not a counteroffer to Kaiser's offer and could not serve as clarification that Kaiser's offer included a waiver of appellate rights.

discretion in finding Kaiser's offer was made in good faith. (*Jones v. Dumrichob, supra,* 63 Cal.App.4th at p. 1264 [burden of proving abuse of discretion in on appellants].)

## DISPOSITION

The judgment and order awarding costs are affirmed. Costs on appeal are awarded to respondent. (Cal. Rules of Court, rule 27(a).)

Scotland, P. J., and Robie, J., concurred.

Appellant's petition for review by the Supreme Court was denied November 30, 2005. Werdegar, J., did not participate therein.