**Sharin S. ANDERSON, Appellant,**

v.

**ALYESKA PIPELINE SERVICE CO., Appellee.**

No. S–13367.

Supreme Court of Alaska.

July 23, 2010.

---

Richard W. Maki and David H. Shoup, Tindall Bennett & Shoup, Anchorage, for Appellant.

David A. Devine, Groh Eggers, LLC, Anchorage, for Appellee.

Before: CARPENETI, Chief Justice, FABE, WINFREE, and CHRISTEN, Justices.

## OPINION

FABE, Justice.

## I. INTRODUCTION

An employee of Doyon Universal Services sustained a head injury while working at a pipeline pump station. She applied for and received workers' compensation benefits for the injury. She also brought a tort suit against Alyeska Pipeline Service Company, the operator of the pipeline pump station, alleging that its negligence was a proximate cause of her injuries. Alyeska sought summary judgment in the lawsuit, asserting that it was a statutory employer under the Alaska Workers' Compensation Act and thus was immune from suit. The superior court granted summary judgment to Alyeska and also awarded it Alaska Civil Rule 68 attorney's fees. Because Alyeska is a project owner, and immune from suit based on that status, we affirm the summary judgment order dismissing the lawsuit. But we reverse the award of Rule 68 attorney's fees because the offer of judgment was not valid.

## II. FACTS AND PROCEEDINGS

Sharin Anderson was injured while working for Doyon Universal Services at Pump Station 5 on the Trans–Alaska Pipeline System. Alyeska Pipeline Service Company, which operates the pipeline, contracted with Doyon to provide security, medical support, lodging, and catering services for employees who operate and maintain the pipeline. As part of its contract with Doyon, Alyeska agreed to provide workers' compensation insurance for Doyon's employees.

On July 25, 2007, Anderson was helping the head cook clean the loading dock area where food was stored. While Anderson was vacuuming, the head cook moved a "heavy duty industrial cart" that was used for food storage from its position near a wall. A table weighing at least seventy pounds had been placed in a vertical position behind the cart; the cases of food on the cart obscured the table from view.

Anderson was squatting while vacuuming. When the head cook removed the cart, the table, which was unsecured, fell directly on Anderson, hitting her in the head. According to the head cook, the force of the table hitting Anderson pushed her ten to twelve feet from her original position. Anderson was unconscious for at least three or four minutes after the table hit her. The head cook reported that Anderson "was having severe convulsions," and he was afraid that she would die. She was transported to Fairbanks Memorial Hospital by helicopter. She filed a report of injury with the Alaska Workers' Compensation Board and received

more than $72,000 in workers' compensation benefits on the claim.

An investigation by Alyeska concluded that the table, which belonged to Alyeska, had been propped against the wall for several months. On December 20, 2007, Anderson filed a negligence action against Alyeska in superior court, seeking damages in excess of $500,000. Before Alyeska filed its answer, it wrote a letter to Anderson's attorney, highlighting the 2004 amendments to the exclusive liability provisions of the Alaska Workers' Compensation Act. The exclusive liability provisions limit an injured worker's remedy against the employer for work-related injuries to workers' compensation when the employer secures payment of compensation.[1] Alyeska informed Anderson that the amendments extended the exclusive liability provisions to project owners, not just employers. Alyeska contended that it was a "project owner" as defined in the amendments and therefore immune from suit for Anderson's injuries.

Alyeska answered Anderson's complaint on January 15, 2008, and raised these exclusive liability provisions as an affirmative defense. A little more than two weeks after its answer, Alyeska made an offer of judgment to Anderson in the amount of ten dollars, plus prejudgment interest, costs, and Alaska Civil Rule 82 attorney's fees. The fax transmittal that accompanied the offer of judgment stated that Alyeska "believe[d] the exclusive remedy protection of AS 23.30.055 applie[d] to this case." Anderson did not accept the offer.

Alyeska moved for summary judgment on March 6, 2008; it asked for a judgment dismissing Anderson's suit because Alyeska was her statutory employer and exempt from suit under AS 23.30.055, the exclusive liability provisions of the Alaska Workers' Compensation Act. Anderson opposed the motion, arguing that the statute should not be construed to include Alyeska within its ambit because Alyeska was not a "project owner" within the meaning of the statute. Anderson argued that applying the definition of "project owner" in AS 23.30.045(f) would create absurd results and that the court should construe "project owner" according to its common usage. She then argued that the pipeline was not a "project," that Alyeska did not own it, and that Alyeska was therefore not protected by the exclusive liability provisions of AS 23.30.055. In response, Alyeska disagreed with Anderson's proposed method of statutory construction and maintained that it fell within the statutory definition of "project owner." It argued in the alternative that maintenance of the pipeline was a project and that it was a "project owner" even if the term was construed according to its common usage.

The superior court granted summary judgment to Alyeska after oral argument on the motion. The court found that there were no genuine issues of material fact. It concluded that Alyeska was a "project owner" within the statutory definition and was therefore entitled to judgment as a matter of law. The court specifically limited its holding to the facts of the case because of the policy arguments Anderson made, noting that "there [was] some power and force" to Anderson's argument that the statute should not be construed broadly.

After the superior court entered final judgment, Alyeska moved for Alaska Civil Rule 68 and 82 attorney's fees in the amount of $12,409.88. Anderson opposed the motion for Rule 68 attorney's fees, asserting that Alyeska's offer of judgment was a "token offer" and should not trigger the provisions of Rule 68. She did not oppose imposition of Rule 82 attorney's fees. In response, Alyeska claimed that its offer was made in good faith and thus it was entitled to Rule 68 fees. Alyeska maintained that it had good reason to believe when it made its offer that "its exposure was nominal." It pointed out that it had notified Anderson's attorney before it filed its summary judgment motion that it would be relying on the exclusive liability provisions of the Alaska Workers' Compensation Act. It stated that its offer of judgment "was based upon an honest and good faith assessment of its potential liability" to Anderson.

---

1. AS 23.30.055.

The superior court granted Alyeska's motion for attorney's fees. The court disagreed with Anderson's argument that Alyeska's nominal offer of judgment should not trigger a Rule 68 fee award. It found that Alyeska's offer of judgment "was a reasonable, good faith offer" and granted Alyeska's attorney's fee request for Rule 82 fees of $175.50, Rule 68 fees of $12,234.38, and costs.

Anderson appeals the dismissal of her suit and the award of Rule 68 attorney's fees.

## III. STANDARD OF REVIEW

 We review a grant of summary judgment de novo.[2] Summary judgment is proper if there is no genuine factual dispute and the moving party is entitled to judgment as a matter of law.[3] In reviewing summary judgment, we draw all reasonable inferences in favor of the nonmoving party.[4] Interpretation of a statute is a question of law to which we apply our independent judgment; we interpret the statute according to reason, practicality, and common sense, considering the meaning of the statute's language, its legislative history, and its purpose.[5]

 Whether an offer of judgment complies with Civil Rule 68 is a question of law that we review using the independent judgment standard.[6] The amount of attorney's fees awarded is reviewed for abuse of discretion.[7]

## IV. DISCUSSION

### A. Alyeska Is A Project Owner Under AS 23.30.045.

The first issue presented in this appeal is the narrow question whether Alyeska is a "project owner" as defined in AS 23.30.045 and is therefore immune from suit under AS 23.30.055.[8] Anderson urges us to construe "project owner" in AS 23.30.045(f) so that it applies only to projects, particularly construction projects, that have a limited duration. Alternatively, she asks us to determine that because Alyeska does not own the pipeline, it is not a "project owner." Alyeska counters that it falls within the definition of "project owner" set out in AS 23.30.045(f)(2) and is therefore immune from suit for Anderson's injuries. It also points out that it provided the workers' compensation insurance that covered Anderson's workers' compensation claim, so application of the exclusive liability provisions of AS 23.30.055 is particularly appropriate here.

The Alaska Legislature changed the exclusive liability provisions of the Alaska Workers' Compensation Act in 2004.[9] The 2004 amendments made project owners potentially liable for workers' compensation benefits to their contractors' and subcontractors' employees and expanded the definition of "employer" for purposes of the exclusive liability provision of the workers' compensation act.[10] Alaska Statute 23.30.045(a) now provides:

An employer is liable for and shall secure the payment to employees of the compensation payable under AS 23.30.041, 23.30.050, 23.30.095, 23.30.145, and 23.30.180—23.30.215. If the employer is a subcontractor and fails to secure the payment of compensation to its employees, the contractor is liable for and shall secure the payment of the compensation to employees of the subcontractor. If the employer is a contractor and fails to secure the payment of compensation to its employees or the employees of a subcontractor, the project owner is liable for and shall secure the

---

**2.** *Parker v. Tomera,* 89 P.3d 761, 765 (Alaska 2004).

**3.** *Id.*

**4.** *Moore v. Allstate Ins. Co.,* 995 P.2d 231, 233 (Alaska 2000).

**5.** *Grimm v. Wagoner,* 77 P.3d 423, 427 (Alaska 2003) (citing *Native Vill. of Elim v. State,* 990 P.2d 1, 5 (Alaska 1999)).

**6.** *Ellison v. Plumbers & Steam Fitters Union Local 375,* 118 P.3d 1070, 1073–74 (Alaska 2005)

(citing *Thomann v. Fouse,* 93 P.3d 1048, 1050 (Alaska 2004)).

**7.** *Lowell v. Hayes,* 117 P.3d 745, 750–51 (Alaska 2005) (citing *Van Deusen v. Seavey,* 53 P.3d 596, 603 n. 23 (Alaska 2002)).

**8.** Neither party has pointed to disputed facts that would preclude summary judgment.

**9.** Ch. 80, SLA 2004.

**10.** *Id.*

payment of the compensation to employees of the contractor and employees of a subcontractor, as applicable.

Alaska Statute 23.30.045(f)(1) defines "contractor," for purposes of AS 23.30.045, as "a person who undertakes by contract performance of certain work for another but does not include a vendor whose primary business is the sale or leasing of tools, equipment, other goods, or property." "Project owner" is defined as "a person who, in the course of the person's business, engages the services of a contractor and who enjoys the beneficial use of the work." [11]

The exclusive liability provision of the workers' compensation statute, AS 23.30.055, provides in part:

> The liability of an employer prescribed in AS 23.30.045 is exclusive and in place of all other liability of the employer and any fellow employee to the employee ... and anyone otherwise entitled to recover damages from the employer or fellow employee at law or in admiralty on account of the injury or death.... In this section, "employer" includes, in addition to the meaning given in AS 23.30.395, a person who, under AS 23.30.045(a), is liable for or potentially liable for securing payment of compensation.

### 1. The statutory definition is controlling.

■ Anderson asks us to construe the words "project" and "owner" according to common usage and general principles of statutory construction to determine whether Alyeska is a "project owner" for purposes of AS 23.30.045 and .055. She argues that broad application of the statutory definition would have unintended consequences, making many businesses potentially liable for workers' compensation benefits when they

hire independent contractors and taking away an employee's right to pursue a negligence action. To minimize these possible results, she contends that "project" should be construed to encompass only construction-type projects of limited duration and that the legislative history supports this narrow reading.

Alyeska responds that the legislature itself defined "project owner" and maintains that the separation of powers doctrine prohibits Anderson's proposed method of construing the statute. It relies on *State v. Jeffery* to argue that the canons of construction on which Anderson bases her argument only apply when the words in a statute do not have a "peculiar meaning, by virtue of statutory definition." [12]

■ Alaska Statute 01.10.040(a) provides, in part, "Technical words and phrases and those which have acquired a peculiar and appropriate meaning, whether by legislative definition or otherwise, shall be construed according to the peculiar and appropriate meaning." With a few narrow exceptions, we do not construe statutory language according to its common meaning when the legislature has provided a definition of a word or phrase, and our statutory construction cases look first to see if the word or phrase to be construed has a specific definition. [13]

Anderson's proposed construction of "project owner" does not fall within the narrow exceptions to this rule. The definition of "project owner" is not circular: It does not, for example, define "project owner" as "a person who owns a project." [14] Nor does Anderson argue that the language of the definition is ambiguous; she does not, for example, argue that her work was not "in the course of" Alyeska's business and for that reason should fall outside the provisions of

---

11. AS 23.30.045(f)(2).

12. *See* 170 P.3d 226, 232 (Alaska 2007) (quoting *Div. of Elections v. Johnstone*, 669 P.2d 537, 539 (Alaska 1983)).

13. *See, e.g., Ranney v. Whitewater Eng'g*, 122 P.3d 214, 218 (Alaska 2005) (construing "wife" for purposes of the workers' compensation act according to its common usage because it "has not

been defined statutorily and has no technical meaning in the present context").

14. *See Parks Hiway Enters., LLC v. CEM Leasing, Inc.*, 995 P.2d 657, 661 (Alaska 2000) (construing "owner" according to common usage because the statutory definition was "circular," defining "owner" as "in the case of a facility, any person owning ... the facility").

AS 23.30.045 and .055.[15] Instead, Anderson asks us to construe the term "project owner" according to the common usage of "project" and "owner," arguing that application of the statutory definition would be contrary to the legislative history.

But even accepting Anderson's invitation to examine the legislative history does not persuade us that Alyeska falls outside the statutory purview. Anderson argues that the legislative history shows that the legislature only meant "project owner" to apply to construction-type projects, not to all businesses that use independent contractors. She illustrates her point by using hypothetical examples where broad application of the statutory definition might impose liability when a business owner was not negligent and had little control over the activities that caused an injury. But our review of the legislative history does not support Anderson's contention that the statute was meant to apply only in the construction context. As Alyeska pointed out at oral argument before us, the legislative history contains at least two hypothetical examples of project owners that involved the oil and gas industry's use of contract labor.

Moreover, the policy considerations that prompted the legislature to enact the 2004 amendments to the workers' compensation act apply outside the construction context. As we noted in *Schiel v. Union Oil Co. of California*, the 2004 amendments had the following purposes: "to ensure or expand workers' compensation coverage for workers, to increase workplace safety, to prevent 'double dipping,' and to provide protection from tort liability to those who are potentially liable for securing workers' compensation coverage." [16] Limiting application of the amendments to the construction field or exempting large employers with ongoing businesses from the definition of "project owner," as Anderson urges, would undermine some of these goals. If Anderson's limited construction of "project owner" were adopted, a gro-

cery store could use contract labor to stock its shelves and completely avoid workers' compensation liability for work-related injuries to the contract laborers simply because its use of contract labor was not related to building or construction or because it used contract labor as part of its day-to-day operations. We see nothing to suggest that the legislature intended such a result.

■ Even though we reject Anderson's argument that the term "project owner" should be limited to the construction context, we acknowledge that she has posed difficult hypothetical examples about the potential workers' compensation liability of small business owners that use contractors to carry out functions extraneous to their businesses.[17] But because we hold that Alyeska falls within the statutory definition of "project owner," we do not have to decide the questions posed in these hypothetical examples.

**2. Alyeska meets the statutory definition.**

■ Alyeska clearly meets the statutory definition of "project owner" in AS 23.30.045(f)(2). In the course of Alyeska's business, which is operating the Trans–Alaska Pipeline System, it engaged the services of Doyon Universal Services. No one contests that Doyon is a contractor. Doyon undertook performance of work for Alyeska, including catering services for employees who operate and maintain the pipeline. It is also uncontested that Alyeska enjoys the beneficial use of Doyon's services: Because of its contract with Doyon, Alyeska does not need to hire its own employees to perform the work done by Doyon. Because Alyeska satisfies the definition of "project owner" in AS 23.30.045(f)(2), it is covered by the exclusive liability provisions of AS 23.30.055. The superior court correctly granted summary judgment to Alyeska and dismissed Anderson's lawsuit.

---

**15.** *See Alaska Hous. Fin. Corp. v. Salvucci,* 950 P.2d 1116, 1121–22 (Alaska 1997) (examining legislative history to determine whether "reports to a public body" in AS 39.90.100 included reports to an employee's own employer).

**16.** 219 P.3d 1025, 1032 (Alaska 2009).

**17.** She posed one hypothetical example involving a small law firm that used the services of a courier to deliver papers or a snow plower in maintaining its building.

## B. It Was Error To Award Alyeska Rule 68 Attorney's Fees.

 Anderson also asks us to reverse the award of attorney's fees under Alaska Civil Rule 68, arguing that Alyeska's ten-dollar offer of judgment made at the outset of the case was only "nominal" and therefore should not have triggered an enhanced attorney's fee award. We agree with Anderson that our opinion in *Beal v. McGuire*[18] controls our analysis of this issue.

The superior court issued its order for attorney's fees before we decided *Beal.* In *Beal,* we held that the one-dollar offers of judgment made at the outset of that case were invalid as a matter of law and could not trigger application of Rule 68 for awarding attorney's fees.[19] We stated that a one-dollar offer of judgment did not serve the purpose of Rule 68, which is "to encourage settlement and avoid protracted litigation" and characterized such an offer as a "tactical demand[ ] that plaintiffs dismiss their claims to avoid exposure to Rule 68 fee[ ] awards."[20] We noted that other courts require that an offer "be made in good faith with the goal of settling the case rather than obtaining a larger fee award."[21] We did not explicitly adopt a good-faith test for offers of judgment in *Beal,* but we decided there that given the timing and amount of the offers, they "could not be considered valid offers of settlement or compromise, or valid attempts to encourage negotiation."[22]

There is no principled distinction between the ten-dollar offer that Alyeska made to Anderson at the outset of this case and the initial one-dollar offer in *Beal.* Even though the superior court found here that the offer was a "reasonable, good faith offer," it also acknowledged that Anderson's policy arguments had "some power and force." We have no doubt that when Alyeska made the offer, it believed that it would prevail in the lawsuit. But there was no objectively reasonable prospect that Anderson would accept ten dollars to settle her case—or that the offer would even start a dialogue that could lead to settlement—at that stage of the litigation. This was particularly true in light of the fact that Anderson's claim raised an issue of first impression that involved interpretation of a new statute and raised difficult policy issues. Moreover, nothing in the record suggests that Alyeska knew, when it made its offer of judgment, what legal arguments Anderson might make to counter its reliance on AS 23.30.055, so it could not assess the strength of those arguments. Alyeska's offer was in effect an opening, "walkaway" offer that had no reasonable chance of acceptance or of fostering further settlement negotiations. This is precisely the type of offer that we indicated in *Beal* could not trigger application of Rule 68.[23]

As we noted in *Beal,* we have not adopted a good-faith test for offers of judgment, and we do not do so here.[24] Our disapproval of nominal offers made at the outset of a case is due to their failure to serve the purposes of Rule 68: to encourage settlement and avoid protracted litigation.[25] When nominal offers are made at the outset of a case and have no prospect of acceptance or of furthering settlement negotiations, they are simply attempts to shift the cost of litigation onto the other party, without regard to the purpose and intent of Rule 68.

We do not mean to suggest that a small offer of judgment can never be valid or that the validity of the offer of judgment should be determined simply by comparing the offer to the amount demanded in the lawsuit. An offer in a case with a tenuous factual basis or

---

18. 216 P.3d 1154 (Alaska 2009).

19. *Id.* at 1176, 1178.

20. *Id.* at 1178.

21. *Id.* at 1177 (citing *Warr v. Williamson,* 359 Ark. 234, 195 S.W.3d 903, 904 (2004); *Century 21 Today Inc. v. Tarrant,* No. 240696, 2003 WL 22443624, at *1 (Mich.App. Oct.28, 2003)).

22. *Id.* at 1178.

23. While the dissent attempts to distinguish *Beal* because of the timing of the offer, Alyeska's offer, like that in *Beal,* "was effectively zero in what appears to be a good faith dispute involving potentially substantial damages." *Beal,* 216 P.3d at 1178.

24. *Id.*

25. *Id.*

controlling legal precedent may be much lower than an offer in a case with a novel legal question.[26] And a nominal offer that might be invalid when made at the outset of a case could trigger application of Rule 68 when made later in the litigation: During the course of litigation, discovery may prompt a reassessment of a case, an offer including Alaska Civil Rule 82 fees and costs may have increased value, or a new court decision could alter the legal strength of a party's case.[27]

Although the dissent characterizes Anderson's case as weak, our opinion recognizes that Anderson posed troublesome policy questions. Moreover, the superior court acknowledged that Anderson's arguments had "some power and force" and limited its decision to the facts of the case. From the perspective of assessing the offer of judgment, though, there is simply no way that Alyeska could reasonably have assessed the strength or weakness of Anderson's case. Nothing in the record suggests that Alyeska knew what Anderson's legal arguments might be—whether she would be challenging the constitutionality of the statute or making a fact-based argument peculiar to her case—when it made its offer of judgment. Finally, Anderson's case presented a novel legal question: The new statute had not been definitively interpreted by any court when she brought her case.

■ In the context of Anderson's case, Alyeska's ten-dollar offer was made shortly after it filed its answer. Anderson was seeking $500,000 in damages for an undisputedly serious head injury caused by a table that belonged to Alyeska. Alyeska's planned defense relied on a newly enacted statute that had not been interpreted by the courts. Under these circumstances, Alyeska's offer did not serve the legitimate purpose of Rule 68 and thus cannot serve as a basis for an award of Rule 68 attorney's fees.[28]

## V. CONCLUSION

Because Alyeska is a "project owner" as set out in AS 23.30.045, we AFFIRM the superior court's order dismissing Anderson's claims against Alyeska. We REVERSE the superior court's order awarding Alyeska Rule 68 attorney's fees because Alyeska's offer of judgment was invalid as a matter of law, and we REMAND for an award of Rule 82 attorney's fees.

CHRISTEN, Justice, dissenting in part.

I write separately to express my disagreement with the court's conclusion that the trial court erred by awarding Rule 68 attorney's fees.

The court disapproves of the nominal offer of judgment Alyeska made at the outset of this case due to its "failure to serve the purpose of Rule 68: to encourage settlement and avoid protracted litigation." In my view, Alyeska's early attempts to settle this case combined with the weakness of Anderson's legal claims support the trial court's award of Rule 68 attorneys fees. I would affirm the superior court's order.

Alyeska responded to Anderson's complaint by writing to explain that the legislature's 2004 amendments to AS 23.30.055—Alaska's Workers' Compensation Act—extended the statute's exclusive remedy provisions to Alyeska because Alyeska fell within the statute's amended definition of "project owner." Alyeska actually forwarded its legislative history research to Anderson's counsel and invited counsel to "discuss the law and your dismissal of this suit prior to any additional fees being incurred." When that

---

**26.** *See Deltona House Rentals, Inc. v. Cloer,* 734 So.2d 586, 588 (Fla.App.1999) (holding that $101 offer of judgment was valid in "a case of zero liability from the outset" but noting that a low offer may not be in good faith when a legal dispute is "novel or complex").

**27.** *Cf. Hartline v. Kaiser Found. Hosps.,* 132 Cal. App.4th 458, 33 Cal.Rptr.3d 713 (2005) (holding that an offer of judgment to waive a claim for costs made after summary adjudication of one of two of the plaintiff's claims was valid).

**28.** We also note that it was error to award both Rule 68 and Rule 82 attorney's fees to Alyeska. *Ellison v. Plumbers & Steam Fitters Union Local 375,* 118 P.3d 1070, 1078 (Alaska 2005). Although no one raised this issue and our disposition of the Rule 68 attorney's fees makes it moot, we note the error to provide guidance in future cases.

attempt was unsuccessful, Alyeska answered the complaint and asserted that the suit was barred by the exclusive liability provisions of AS 23.30.055. Alyeska made an early—and admittedly nominal—settlement offer under Rule 68. The offer was accompanied by a cover sheet reiterating that because "the exclusive remedy protection of AS 23.30.055 applies to this case, we think it makes sense to try and secure an early dismissal ... before incurring costs and attorney's fees." Apart from offering to pay a significant amount of money despite its lack of litigation risk, it is hard to identify steps Alyeska could have taken that would have been *more* likely to avoid incurring significant fees, or to foster a constructive dialogue about the 2004 statutory amendments.

The court "finds no principled distinction between the ten-dollar offer Alyeska made to Anderson at the outset of this case and the initial one-dollar offer in *Beal* [*v. McGuire*]." [1] In my view, there are several reasons *Beal* is distinguishable. First, the defendants in *Beal* "served their individual offers of judgment before they asserted their counterclaims." [2] Under those circumstances, our court viewed the early one-dollar settlement offers in *Beal* to be consistent with "tactical demands" rather than a "valid attempt[ ] to encourage negotiation." [3] Because the settlement offers in *Beal* were conveyed before the counterclaims had been asserted, the opposing parties had a very limited ability to assess the merits of the dispute. In contrast, Alyeska expressly communicated its theory of the case to Anderson and even forwarded its research on the applicable legislative history. Alyeska's actions were objectively consistent with an attempt to settle the case in its earliest stages before significant fees were incurred.[4]

The early offers in *Beal* were also less likely to result in fruitful settlement discussions because fact discovery was needed in order to gauge the merits of the parties' respective arguments. Alyeska's defense to Anderson's claim was not fact dependent. In the decision issued today, the court acknowledges that "an offer in a case with a tenuous factual basis or controlling legal precedent may be much lower than an offer in a case with a novel legal question." But the court does not acknowledge that it was not necessary to conduct fact discovery to assess the merits of Alyeska's defense; it turned on a purely legal issue of statutory interpretation.

The court seems to place considerable weight on its view that Anderson's case presented a novel legal question because Alyeska relied on a newly enacted statute that had not been interpreted by the courts. I agree there was no case law precedent controlling Anderson's claim, but that is because it relied on a recently enacted statute. Anderson's claim was not based on any ambiguity or circularity in the statute. It was based on the argument that the superior court should not construe the term "project owner" according to its statutory definition. As the supreme court's decision observes, "we do not construe statutory language according to its common meaning when the legislature has provided a definition of a word or phrase." The court goes on to reject Anderson's view that the legislative history of the 2004 amendments supports her position, and concludes that Alyeska "clearly meets the statutory definition of 'project owner' under AS 23.30.045(f)(2)." Yet the court suggests that nominal offers of judgment should be deemed invalid when a case presents a novel legal question. Here, the troublesome policy questions presented by Anderson apply to hypotheticals not at issue in her case. A novel claim may also be a weak one, and in my view a party defending against a weak legal claim should be able to employ Rule 68 to increase the chances of reaching an early

---

1. *Beal v. McGuire*, 216 P.3d 1154, 1178 (Alaska 2009).

2. *Id.*

3. *Id.*

4. The court observes that "nothing in the record suggests that Alyeska knew what Anderson's le-

gal arguments might be ... when it made its offer of judgment." In my view, the salient point is that Anderson *was* in a position to assess the merits of the statutory interpretation question Alyeska gave her its research and analysis. Alyeska was the only one disadvantaged by the fact that Anderson had not disclosed her legal argument.

settlement before incurring significant legal fees.

For the same reasons our court concludes that the statutory definition of "project owner" so "clearly and unambiguously" applies to Alyeska, I conclude that Alyeska's early and nominal offer, which was accompanied by its legal analysis and not dependent on factual discovery, was reasonable and valid under Rule 68. And I respectfully dissent from the portion of the court's decision that reverses the superior court's Rule 68 fee award.